Hearing Date and Time: January 20, 2016 at 2:00 p.m. (ET)

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Glenn M. Kurtz
Scott Greissman
Charles R. Koster

*Attorneys for Nordea Bank Norge ASA,
as Facility Agent*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
In re                                                  :       Chapter 11
:
PRIMORSK INTERNATIONAL SHIPPING       :       Case No. 16-10073 (MG)
LIMITED, *et al.*,[1]                              :
:       Joint Administration Pending
Debtors.                      :
---------------------------------------------------------------x

**STATEMENT OF FACILITY AGENT REGARDING COMMENCEMENT OF THESE
CHAPTER 11 CASES AND USE OF CASH COLLATERAL**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Nordea Bank Norge ASA, in its capacity as agent and security trustee (the "Facility Agent") under that certain secured loan facility agreement dated January 2, 2008 (as amended from time to time) (the "Nordea Facility Agreement") relating to a $530 million secured loan facility, for itself and the other lender parties thereto (the "Senior Lenders"), by and

---

[1] The Debtors in these chapter 11 cases and, if applicable, the last four digits of their U.S. taxpayer identification numbers are: Primorsk International Shipping Limited (Cyprus), Boussol Shipping Limited (Cyprus) (6402) – m/t "Zaliv Amerika", Malthus Navigation Limited (Cyprus) (6401) – m/t "Zaliv Amurskiy", Jixandra Shipping Limited (Cyprus) (6168) – m/t "Prisco Alexandra", Levaser Navigation Limited (Cyprus) (0605) – m/t "Prisco Ekaterina", Hermine Shipping Limited (Cyprus) (0596) – m/t "Prisco Irina", Laperouse Shipping Limited (Cyprus) (0603) – m/t "Prisco Elizaveta", Prylotina Shipping Limited (Cyprus) (6085) – m/t "Prisco Elena", Baikal Shipping Ltd (Liberia) (6592) – m/t "Zaliv Baikal" and Vostok Navigation Ltd (Liberia) (1745) – m/t "Zaliv Vostok".

Americas 91032925

through its undersigned counsel, hereby files this statement regarding the commencement of these chapter 11 cases and the use of cash collateral and respectfully states as follows:[2]

## STATEMENT

1. The Debtors filed these chapter 11 cases without any prior notice to or coordination with the Senior Lenders, and proposed, at around 10 p.m. on Sunday, a bare bones form of cash collateral order that included few of the protections normally afforded to secured creditors in a consensual cash collateral arrangement. Following extensive negotiations between the Facility Agent and the Debtors, the parties have reached a short term agreement on a redrafted cash collateral order that the Facility Agent understands the Debtors will soon file. The Debtors in the revised order have now agreed to some modifications that provide the Senior Lenders with more market standard protections. There are a number of problems, however, that are not resolved. These include, among others, stipulations regarding the Senior Lenders' claims and liens, adequate protection, budget compliance, the commencement of a challenge period, market standard remedies upon default, and issues regarding a carve out and section 506(c) waiver. The parties have agreed to continue to work to resolve these and other remaining issues.

2. Notwithstanding resolution of the most immediate dispute between the Debtors and the Senior Lenders, the Facility Agent brings to the Court's attention certain relevant facts omitted by the Debtors in their recitation in the First Day Affidavit. The Senior Lenders and the Debtors share the same short term objective—that the vessels continue to trade uninterrupted so as to maximize cash flows and preserve value. But the Facility Agent disagrees with the Debtors' apparent strategy of forcing the Senior Lenders to finance these chapter 11 cases and the Debtors' exit from chapter 11 solely for the benefit of junior stakeholders.

---

[2] Capitalized terms used but not defined herein have the meaning ascribed to them in the Declaration of Holly Felder Etlin Pursuant to Rule 1008-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First Day Motions and Applications [Docket No. 2] (the "First Day Affidavit").

3. The Debtors acknowledge that their only assets, nine vessels (oil tankers), are encumbered by approximately $265 million of the Senior Lenders' debt which matured by its own terms, prepetition, in June of 2015.[3] However, the Debtors did not disclose that, on or about the maturity date, they entered into a complex and highly structured forbearance agreement with the Senior Lenders (painstakingly negotiated among counsel and advisors over the previous three months) pursuant to which the Senior Lenders agreed to stand still for over six additional months, post-maturity, and the Debtors agreed to sell their fleet, either in its entirety or, failing that, on a ship by ship basis, to repay their secured debt.[4] The Debtors negotiated for, but were ultimately unable to close at year-end, a fleet sale transaction for an amount in excess of their secured debt with a third party purchaser. The Debtors did not attempt individual vessel sales, as they had promised in the forbearance agreement.

4. The Debtors state that the Facility Agent recently swept $7.3 million of excess cash, but failed to disclose that the Facility Agent was permitted to do so under the Nordea Facility Agreement and related security documents, and also left _millions_ of dollars behind in the Debtors' various accounts to ensure uninterrupted vessel operations in the hope that cooperative discussions over completing the promised sale would continue. Notably, it now appears that the Debtors had already diverted charter revenues and encumbered the vessels with new long term charters in violation of the Nordea Facility Agreement and related loan documents.

---

[3] This amount includes first lien principal indebtedness totaling approximately $195 million, second lien principal indebtedness totaling approximately $52 million, and third lien principal indebtedness totaling approximately $18 million, plus in each case interest, fees, costs and other charges and expenses. The third lien indebtedness is owed under a swap facility provided by BNP Paribas.

[4] The Debtors incorrectly represent that the sale process was conducted over a four-month period. See First Day Aff. ¶ 34.

5.      The Debtors have revealed that their ultimate exit strategy is to hand ownership of the company to out-of-the-money junior stakeholders—bondholders and equity—while trying to force the Senior Lenders to finance operations with cash collateral and with take back paper predicated on unrealistically rosy projections.  In short, the Debtors are trying to compel the Senior Lenders to finance some highly speculative option value for junior stakeholders, including conflicted equity.  While the Senior Lenders would bear all of the risk of the reorganized Debtors, the junior stakeholders would receive all of the potential upside.  To further their strategy, the Debtors have threatened the valid liens of the Senior Lenders on some portion of the vessel revenues.

6.      The Debtors' approach appears unrealistic.  The market deteriorated last year during the forbearance period notwithstanding the Debtors' similar optimism.  To date, in part because of the depreciating nature of the collateral and persistent market forces that have defied yearly predictions of a rebound, no shipping Debtor has confirmed a cram down plan over the objection of the entire secured portion of the capital structure.  Invariably, absent agreement with their secured creditors these cases fail, and the vessels are liquidated or handed back to secured creditors, but only after substantial cost, expense, and value destruction.  All parties presumably hope to prevent such a result here.  But vigilance is necessary.[5]

7.      If any equity cushion is left in the vessels, it is at best razor thin and certainly not sufficient to adequately protect the Senior Lenders in this market.  If the Debtors' future value proposition also does not pan out, the Senior Lenders will suffer additional economic loss in the form of further value diminution from vessel depreciation and market

---

[5]    This process will require full transparency, including regarding the facts and circumstances surrounding any recent long term charters, earnings diversions and legal and beneficial ownership of the bonds and equity interests.

forces, as well as the cost and expenses of these cases, which will be considerable. Meanwhile, the non-Debtor affiliate management company will reap millions of dollars in management fees.

8. The Senior Lenders have been patient, and have negotiated at all times in good faith with the Debtors. They remain ready and willing to meet with the Debtors to try to negotiate a consensual restructuring. The Senior Lenders, however, are not willing to bear the entire risk of a restructuring process run solely for the benefit of junior stakeholders.

## **RESERVATION OF RIGHTS**

9. The Facility Agent reserves all rights and claims in these cases, including, but not limited to, the right to file any dispositive motions, object to jurisdiction and venue and seek additional relief in respect of its interests.

[*Remainder of page intentionally left blank*]

Dated: January 20, 2014
      New York, New York

                                       Respectfully submitted,

By:    */s/ Scott Greissman*
        WHITE & CASE LLP
        Glenn M. Kurtz
        Scott Greissman
        Charles R. Koster
        1155 Avenue of the Americas
        New York, NY 10036
        Telephone:  (212) 819-8200
        Facsimile:  (212) 354-8113
        gkurtz@whitecase.com
        sgreissman@whitecase.com
        ckoster@whitecase.com

        Attorneys for Nordea Bank Norge ASA, as Facility Agent

Americas 91032925