**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————— x

In re                                              :        Chapter 11
                                                   :
                                                   :        Case No. 16-10073 (MG)
PRIMORSK INTERNATIONAL SHIPPING                    :
LIMITED, *et al.*, [1]                             :
                                                   :        Jointly Administered
                                                   :
                       Debtors.                    :
                                                   :
—————————————————————— x

## JOINT CHAPTER 11 PLAN OF REORGANIZATION OF PRIMORSK INTERNATIONAL SHIPPING LIMITED AND ITS DEBTOR AFFILIATES

Andrew G. Dietderich
Brian D. Glueckstein
Alexa J. Kranzley
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:   (212) 558-4000

Counsel to the Debtors and
Debtors-in-Possession

Dated: March 15, 2016

---

[1]    The Debtors in these Chapter 11 Cases and, if applicable, the last four digits of their U.S. taxpayer identification numbers are: Primorsk International Shipping Limited (Cyprus), Boussol Shipping Limited (Cyprus) (6402) – m/t "Zaliv Amerika", Malthus Navigation Limited (Cyprus) (6401) – m/t "Zaliv Amurskiy", Jixandra Shipping Limited (Cyprus) (6168) – m/t "Prisco Alexandra", Levaser Navigation Limited (Cyprus) (0605) – m/t "Prisco Ekaterina", Hermine Shipping Limited (Cyprus) (0596) – m/t "Prisco Irina", Laperouse Shipping Limited (Cyprus) (0603) – m/t "Prisco Elizaveta", Prylotina Shipping Limited (Cyprus) (6085) – m/t "Prisco Elena", Baikal Shipping Ltd (Liberia) (6592) – m/t "Zaliv Baikal" and Vostok Navigation Ltd (Liberia) (1745) – m/t "Zaliv Vostok".

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| 1. | INTRODUCTION | 1 |
| 2. | DEFINITIONS AND RULES OF INTERPRETATION | 2 |
| | 2.1. Defined Terms | 2 |
| | 2.2. Rules of Interpretation | 13 |
| | 2.3. Governing Law | 13 |
| | 2.4. Computation of Time | 14 |
| 3. | GENERAL ADMINISTRATIVE CLAIMS, PROFESSIONAL CLAIMS AND UNITED STATES TRUSTEE STATUTORY FEES | 15 |
| | 3.1. Administrative Claim Bar Date | 15 |
| | 3.2. General Administrative Claims | 15 |
| | 3.3. Professional Claims | 16 |
| | 3.4. Statutory Fees Payable Pursuant to 28 U.S.C. § 1930 | 16 |
| 4. | CLASSIFICATION, TREATMENT AND VOTING OF CLAIMS AND EQUITY INTERESTS | 17 |
| | 4.1. Classification of Claims and Equity Interests | 17 |
| | 4.2. Treatment of Claims and Equity Interests | 17 |
| | 4.3. Intercompany Claims and Interests | 21 |
| | 4.4. Special Provision Governing Unimpaired Claims | 21 |
| | 4.5. Confirmation Pursuant to Sections 1129(a) and 1129(b) of the Bankruptcy Code | 21 |
| 5. | IMPLEMENTATION OF THE PLAN | 22 |
| | 5.1. Operations Between the Confirmation Date and Effective Date | 22 |
| | 5.2. Other Restructuring Transactions | 22 |
| | 5.3. Vesting of Assets in the Reorganized Debtors | 22 |
| | 5.4. Cancelation of Existing Agreements, Notes and Equity Interests | 22 |
| | 5.5. New Common Stock | 23 |
| | 5.6. Exemption from Registration | 23 |
| | 5.7. Replacement Loans | 23 |
| | 5.8. Section 1146 Exemption from Certain Transfer Taxes and Recording Fees | 24 |
| | 5.9. Preservation of Causes of Action | 25 |
| | 5.10. Effectuating Documents and Further Transactions | 25 |
| | 5.11. Reinstatement of Interests in Debtor Subsidiaries | 25 |
| | 5.12. Intercompany Account Settlement | 25 |
| | 5.13. Fees and Expenses of the Agents and Norwegian Bond Trustee | 26 |
| 6. | CORPORATE GOVERNANCE AND MANAGEMENT | 27 |
| | 6.1. Corporate Existence | 27 |

6.2.    Organizational Documents.................................................................... 27
6.3.    Indemnification Provisions in Organizational Documents ................... 27
6.4.    Directors and Officers of the Reorganized Debtors............................. 27

7.    COMPENSATION AND BENEFITS PROGRAMS .......................................28

7.1.    Continuing Compensation and Benefits Programs ............................. 28
7.2.    New Management Agreements ........................................................... 28
7.3.    Compensation Arrangements with APS .............................................. 28

8.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..........29

8.1.    Assumption of Executory Contracts and Unexpired Leases................ 29
8.2.    Rejection of Specified Contracts ........................................................ 29
8.3.    Claims Against the Debtors Upon Rejection ...................................... 29
8.4.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ........ 29
8.5.    Effect of Assumption ......................................................................... 30
8.6.    Modification, Amendments, Supplements, Restatements or Other
        Agreements ....................................................................................... 31
8.7.    Reservation of Rights.......................................................................... 31
8.8.    Contracts and Leases Entered Into After the Petition Date ................. 31

9.    PROVISIONS GOVERNING DISTRIBUTIONS ........................................32

9.1.    Distributions....................................................................................... 32
9.2.    Record Date and Delivery of Distributions ....................................... 32
9.3.    Distribution Agents ............................................................................ 33
9.4.    Fractional and De Minimis Distributions ........................................... 34
9.5.    Undeliverable Distributions ............................................................... 34
9.6.    Reversion ........................................................................................... 34
9.7.    Surrender of Canceled Instruments or Securities................................ 35
9.8.    Compliance with Tax Requirements and Allocations to Principal and
        Interest............................................................................................... 35
9.9.    Setoffs ................................................................................................ 35
9.10.   No Postpetition Interest on Claims .................................................... 36
9.11.   No Payment Over the Full Amount .................................................... 36

10.    PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND
       DISPUTED CLAIMS ....................................................................................37

10.1.   Objections to Claims........................................................................... 37
10.2.   Estimation of Claims........................................................................... 37
10.3.   Expungement and Disallowance of Claims ........................................ 37
10.4.   Amendments to Proofs of Claim ........................................................ 38
10.5.   No Distributions Pending Allowance ................................................. 38
10.6.   Distributions After Allowance ........................................................... 38
10.7.   Administration Responsibilities.......................................................... 38

11.    CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN ..........................39

    11.1.    Conditions Precedent to the Effective Date ..................................... 39
    11.2.    Waiver of Conditions ...................................................................... 39
    11.3.    Simultaneous Transactions ............................................................ 39
    11.4.    Effect of Non-Occurrence of the Effective Date ............................ 40

12.    SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS ..............41

    12.1.    Compromise and Settlement ........................................................... 41
    12.2.    Subordinated Claims ...................................................................... 41
    12.3.    Discharge of Claims and Termination of Equity Interests.............. 41
    12.4.    Release of Liens ............................................................................. 41
    12.5.    Debtor Release ............................................................................... 42
    12.6.    Voluntary Release by Holders of Claims and Equity Interests....... 42
    12.7.    Scope of Releases .......................................................................... 43
    12.8.    Exculpation .................................................................................... 43
    12.9.    Injunction ...................................................................................... 44
    12.10.  Limitations on Exculpations and Releases ..................................... 44

13.    MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ...................45

    13.1.    Modification of Plan ...................................................................... 45
    13.2.    Effect of Confirmation on Modification ........................................ 45
    13.3.    Revocation of Plan ........................................................................ 45

14.    RETENTION OF JURISDICTION ........................................................................46

    14.1.    Retention of Jurisdiction ............................................................... 46

15.    MISCELLANEOUS PROVISIONS ........................................................................49

    15.1.    Immediate Binding Effect .............................................................. 49
    15.2.    Additional Documents ................................................................... 49
    15.3.    Reservation of Rights ..................................................................... 49
    15.4.    Successors and Assigns................................................................... 49
    15.5.    Term of Injunction or Stays ........................................................... 49
    15.6.    Entire Agreement ........................................................................... 50
    15.7.    Exhibits .......................................................................................... 50
    15.8.    Nonseverability of Plan Provisions Upon Confirmation ................ 50
    15.9.    Closing of Chapter 11 Cases .......................................................... 50
    15.10.  Conflicts ......................................................................................... 50
    15.11.  Further Assurances......................................................................... 51
    15.12.  No Stay of Confirmation Order ...................................................... 51
    15.13.  Waiver or Estoppel ........................................................................ 51
    15.14.  Post-Effective Date Service ........................................................... 51
    15.15.  Notices ........................................................................................... 51

SC1:4030160.8

1.    **INTRODUCTION**

Primorsk International Shipping Limited ("*Primorsk*") and its debtor affiliates, as debtors-in-possession in the above-captioned Chapter 11 Cases (each a "*Debtor Subsidiary*" and together with Primorsk, the "*Debtors*"), propose the following joint plan of reorganization (including the Plan Supplement and all other exhibits and schedules thereto, the "*Plan*") pursuant to section 1121(a) of the Bankruptcy Code.  These Chapter 11 Cases are being jointly administered pursuant to an order of the Bankruptcy Court dated January 21, 2016.  Each Debtor is a proponent of the Plan for purposes of section 1129 of the Bankruptcy Code.

2. **DEFINITIONS AND RULES OF INTERPRETATION**

2.1.  Defined Terms

Except as otherwise provided herein, each capitalized term used in this Plan shall have the meaning set forth below.

2.1.1    "*Administrative Claim*" means a Claim arising under section 503(b) or 507(b) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Professional Claims; (c) Claims arising under section 361(1) of the Bankruptcy Code; and (d) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. 1911 and 1930.

2.1.2    "*Administrative Claim Bar Date*" means the date by which Proofs of Claim in respect of Administrative Claims must be filed, as determined by an order of the Bankruptcy Court.

2.1.3    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

2.1.4    "*Agents*" means the Secured Agent and the Swap Agent.

2.1.5    "*Allowed*" means, with respect to any Claim, that (a) such Claim has been allowed by the Plan or an order of the Bankruptcy Court; (b) such Claim has been allowed, compromised or settled in writing (i) prior to the Effective Date, by the Debtors in accordance with authority granted by an order of the Bankruptcy Court; or (ii) on or after the Effective Date, by the Reorganized Debtors; (c) such Claim is listed in the Schedules as not disputed, not contingent and not unliquidated and (i) no Proof of Claim has been filed; (ii) no objection to allowance, request for estimation, motion to deem the Schedules amended or other challenge has been filed prior to the Claims Objection Bar Date; and (iii) such Claim is not otherwise subject to disallowance under section 502(d) of the Bankruptcy Code; (d) such Claim is evidenced by a valid and timely filed Proof of Claim and (i) no objection to allowance, request for estimation, or other challenge has been filed prior to the Claims Objection Bar Date, as applicable; and (ii) such Claim is not otherwise subject to disallowance under section 502(d); or (e) in the case of an Administrative Claim, such Claim is subject to a request for payment timely filed and served in accordance with Section 3.1 herein and no objection to such Claim is timely filed and served pursuant to such Section.

2.1.6    "*Amortizing*" means the amortization of the Tranche A Replacement Loans as set forth in Exhibit 2 attached hereto, as amended and modified by the Plan Supplement.

2.1.7    "*Applicable Margin*" means the applicable margin of the Replacement Loans as set forth in Exhibit 2 attached hereto, as amended and modified by the Plan Supplement.

2.1.8    "*Approving Bondholder*" means any Holder of a Norwegian Bond Claim who (a) duly voted to accept the Plan by the Voting Deadline and (b) continues to hold Norwegian Bond Claims that would entitle such Holder to receive at least 25% of the aggregate New Common Stock in accordance with the Plan.

2.1.9    "*APS*" means AP Services, LLC.

2.1.10    "*APS Retention Order*" means the Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) (I) Authorizing the Retention and Employment of AP Services, LLC and (II) Designating Holly Felder Etlin as Chief Restructuring Officer *Nunc Pro Tunc* to the Petition Dated, dated February 18, 2016 [Docket No. 61].

2.1.11    "*Avoidance Actions*" means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by any of the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b) and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law.

2.1.12    "*Ballots*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

2.1.13    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

2.1.14    "*Bankruptcy Court*" or "*Court*" means the United States Bankruptcy Court for the Southern District of New York.

2.1.15    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to these Chapter 11 Cases, and the general, local and chambers rules of the Bankruptcy Court.

2.1.16    "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

2.1.17    "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

2.1.18    "*Cause of Action*" means any action, claim, cause of action, controversy, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law. Causes of

Action also include: (a) any right of setoff, counterclaim or recoupment and any claim on
contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims
or interests; (c) any claim pursuant to section 362 of the Bankruptcy Code; (d) any Avoidance
Action; (e) any claim or defense, including fraud, mistake, duress and usury and any other
defenses set forth in section 558 of the Bankruptcy Code; and (f) any state law fraudulent
transfer claim.

2.1.19    "*Certificate*" means any instrument evidencing a Claim or an Equity
Interest.

2.1.20    "*Chapter 11 Cases*" means (a) when used with reference to a particular
Debtor, the chapter 11 case pending for that Debtor under chapter 11 of the Bankruptcy Code in
the Bankruptcy Court and (b) when used with reference to all Debtors, the jointly administered
chapter 11 cases pending for the Debtors in the Bankruptcy Court.

2.1.21    "*Claim*" means any claim against a Debtor as defined in section 101(5)
of the Bankruptcy Code.

2.1.22    "*Claims Bar Date*" means (a) 4:00 p.m. (Eastern Time) on
[_____], 2016; or (b) such other date established by order of the Bankruptcy Court by which
Proofs of Claim must have been filed.

2.1.23    "*Claims Objection Bar Date*" means (a) the date that is the later of
(i) 120 days after the Effective Date, or (ii) as to Proofs of Claim filed after the applicable
Claims Bar Date, the 60th day after a Final Order is entered by the Bankruptcy Court deeming the
late-filed Proof of Claim to be treated as timely filed; or (b) such later date as may be established
by order of the Bankruptcy Court upon a motion by the Reorganized Debtors, with notice only to
those parties entitled to receive notice pursuant to Bankruptcy Rule 2002.

2.1.24    "*Claims Register*" means the official register of Claims maintained by
the Notice and Claims Agent.

2.1.25    "*Class*" means a class of Claims or Equity Interests as set forth in
Article 4 herein pursuant to section 1122(a) of the Bankruptcy Code.

2.1.26    "*Compensation and Benefits Programs*" means all contracts, plans,
policies, agreements, programs and other arrangements (and all amendments and modifications
thereto) for compensation or benefits, in each case in place as of the Effective Date, applicable to
the Debtors' employees, including all savings plans, retirement plans, health care plans, travel
benefits, vacation benefits, welfare benefits, disability plans, severance benefit plans, incentive
or retention plans and life, accidental death and dismemberment insurance plans.

2.1.27    "*Continuing Compensation and Benefits Programs*" means all
Compensation and Benefits Programs that are not (a) rejected or terminated prior to the Effective
Date; (b) listed in the Plan Supplement to be rejected or terminated as of the Effective Date; or
(c) as of the Effective Date, the subject of a pending motion to reject.

2.1.28    "*Confirmation*" means the entry of the Confirmation Order on the docket of these Chapter 11 Cases.

2.1.29    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of these Chapter 11 Cases.

2.1.30    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

2.1.31    "*Confirmation Order*" means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

2.1.32    "*Consummation*" means the occurrence of the Effective Date.

2.1.33    "*Cure Amounts*" means all cure amounts required to be paid under section 365 of the Bankruptcy Code in connection with the assumption of an Executory Contract or Unexpired Lease, as determined by the Bankruptcy Court or as agreed to by the Debtors and the non-Debtor counterparty to such Executory Contract or Unexpired Lease.

2.1.34    "*Cure Notice*" means a notice of assumption of an Executory Contract or Unexpired Lease and the related Cure Amounts, if any, to be served on the counterparty of such Executory Contract or Unexpired Lease in accordance with Section 8.4 herein.

2.1.35    "*Cure Schedule*" means the schedule setting forth the Cure Amounts, if any, for each Executory Contract and Unexpired Lease to be assumed pursuant to Section 8.1 herein.

2.1.36    "*Debtor Subsidiary*" has the meaning set forth in the Introduction hereto.

2.1.37    "*Debtors*" has the meaning set forth in the Introduction hereto.

2.1.38    "*Disclosure Statement*" means the Disclosure Statement for the Plan, as approved by the Bankruptcy Court pursuant to the Solicitation Procedures Order, including all exhibits and schedules thereto and references therein that relate to the Plan.

2.1.39    "*Disputed Claim*" means any Claim that has not been Allowed.

2.1.40    "*Distribution*" means a distribution of property pursuant to the Plan, to take place as provided for herein.

2.1.41    "*Distribution Agent*" means the Reorganized Debtors or any Entity or Entities chosen by the Reorganized Debtors, and may include the Notice and Claims Agent.

2.1.42    "*Distribution Date*" means the Business Day that is as soon as practicable after the Effective Date when Distributions under the Plan shall commence, which date shall be no later than 20 Business Days after the Effective Date unless extended by the Bankruptcy Court for cause shown.

2.1.43    "*Distributions Record Date*" means, for the purpose of making Distributions hereunder, the Confirmation Date.

2.1.44    "*Effective Date*" means, following the Confirmation Date, 12:01 a.m. prevailing Eastern Time on a Business Day selected by the Debtors, on which all conditions to the occurrence of the Effective Date set forth in Sections 11.1 and 11.2 herein are satisfied or waived.

2.1.45    "*Entity*" incorporates the meaning set forth in section 101(15) of the Bankruptcy Code.

2.1.46    "*Equity Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code), including any issued or unissued share of common stock, preferred stock, or other instrument evidencing an ownership interest in a Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest in a Debtor that existed immediately prior to the Effective Date; *provided* that Equity Interest does not include any Intercompany Interest.

2.1.47    "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

2.1.48    "*Exchange Rate*" means the closing exchange rate on January 14, 2016, as published by *The Wall Street Journal*.

2.1.49    "*Exculpated Parties*" means (a) the Debtors and the Reorganized Debtors; and (b) the current and former directors, officers (including the chief restructuring officer and interim management), employees, agents, attorneys, financial advisors, restructuring advisors, investment bankers, accountants, and other professionals or representatives of the Debtors and the Reorganized Debtors, in their capacities as such; and (c) with respect to each Entity named in (a) and (b), such Entity's directors, officers, employees, agents, Affiliates, parents, subsidiaries, predecessors, successors, heirs, executors and assigns, attorneys, financial advisors, restructuring advisors, investment bankers, accountants and other Professionals or representatives when acting in any such capacities.

2.1.50    "*Executory Contract*" means a contract that a Debtor may assume or reject under section 365 or 1123 of the Bankruptcy Code.

2.1.51    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, seek certiorari or move for a new trial, re-argument or rehearing has expired and no appeal, petition for certiorari or motion for a new trial, re-argument or rehearing has been timely filed, or as to which any appeal that has been taken, any petition for certiorari, or motion for a new trial, review, re-argument, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; *provided* that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 9024, may be filed relating to an order shall not by itself cause such order to not be a Final Order.

- 6 -

2.1.52    "*General Administrative Claim*" means an Administrative Claim other than a Professional Claim.

2.1.53    "*General Unsecured Claim*" means any Claim that is not an (a) Administrative Claim, (b) Other Priority Claim, (c) Other Secured Claim, (d) Senior Secured Claim, (e) Junior Secured Claim, (f) Swap Secured Claim, (g) Norwegian Bond Claim, (h) Equity Interest or (i) Intercompany Claim.

2.1.54    "*Holder*" means an Entity holding a Claim against or an Equity Interest in any of the Debtors.

2.1.55    "*Impaired*" means, with respect to any Claim or Equity Interest, a Claim or Equity Interest that is in a Class that is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

2.1.56    "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor or a Non-Debtor Subsidiary, or any Claim held by a Non-Debtor Subsidiary against a Debtor.

2.1.57    "*Intercompany Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code), including any issued or unissued share of common stock, preferred stock, or other instrument, evidencing an ownership interest in a Debtor (other than Primorsk) or a subsidiary held by another Debtor.

2.1.58    "*Junior Secured Claim*" mean any Claim arising under or in connection with the junior revolving credit facility pursuant to the Secured Loan Agreement.

2.1.59    "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

2.1.60    "*Management Agreements*" means the Debtors' existing ship management agreements with Prisco.

2.1.61    "*New Class A Common Stock*" means the class A common stock of Reorganized Primorsk authorized pursuant to the Reorganized Primorsk Certificate of Incorporation, with the material terms as set forth in Exhibit 1 attached hereto, as amended and modified by the Plan Supplement.

2.1.62    "*New Class B Common Stock*" means the class B common stock of Reorganized Primorsk authorized pursuant to the Reorganized Primorsk Certificate of Incorporation, with the material terms as set forth in Exhibit 1 attached hereto, as amended and modified by the Plan Supplement.

2.1.63    "*New Common Stock*" means the New Class A Common Stock and the New Class B Common Stock.

2.1.64    "*New Management Agreements*" means the Reorganized Debtors' new management services agreements with Prisco, with the material terms as set forth in Exhibit 3 attached hereto, as amended and modified by the Plan Supplement.

2.1.65    "*Non-Debtor Subsidiary*" means Isardia Holdings Limited, Walmer Shipping Co. Limited or Shipworth Shipping Company Limited.

2.1.66    "*Norwegian Bonds*" means the bonds issued by Primorsk pursuant to the Norwegian Bond Indenture.

2.1.67    "*Norwegian Bond Claim*" mean any Claim arising under or in connection with the Norwegian Bond Indenture, excluding any Claim of the Norwegian Bond Trustee for fees, costs, and expenses under or in connection with the Norwegian Bond Indenture or any related documents.

2.1.68    "*Norwegian Bond Indenture*" means the loan agreement, dated as of February 23, 2007, among Primorsk, the Norwegian Bond Trustee and the bondholders party thereto, as such agreement has been and may be amended, supplemented, or otherwise modified from time to time.

2.1.69    "*Norwegian Bond Trustee*" means Nordic Trustee ASA (f/k/a Norsk Tillitsmann ASA), as loan trustee to the bondholders pursuant to the Norwegian Bond Indenture.

2.1.70    "*Notice and Claims Agent*" means Kurtzman Carson Consultants LLC, located at 2335 Alaska Avenue, El Segundo, California 90245, retained and approved by the Bankruptcy Court as the Debtors' notice and claims agent.

2.1.71    "*Ordinary Course General Administrative Claim*" means a General Administrative Claim that is a monetary obligation for (a) goods or services incurred by the Debtors in the ordinary course of the Debtors' business or (b) Continuing Compensation and Benefits Programs.

2.1.72    "*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim.

2.1.73    "*Other Secured Claim*" means any Secured Claim other than a Senior Secured Claim, a Junior Secured Claim or a Swap Secured Claim.

2.1.74    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

2.1.75    "*Petition Date*" means January 15, 2016.

2.1.76    "*Plan*" has the meaning set forth in the Introduction hereto.

2.1.77    "*Plan Supplement*" means the initial compilation of documents and forms of documents, schedules and exhibits to the Plan, to be filed by Primorsk and available on the Notice and Claims Agent's website, www.kccllc.net/primorsk, no later than seven days prior

to the Voting Deadline or such later date as may be approved by the Bankruptcy Court, and additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.[2]

2.1.78    "*Prepetition*" means prior to the Petition Date of January 15, 2016.

2.1.79    "*Primorsk*" has the meaning set forth in the Introduction hereto.

2.1.80    "*Prisco*" means Prisco (Singapore) Pte Ltd.

2.1.81    "*Pro Rata*" means, with respect to an Allowed Claim, the percentage represented by a fraction (a) the numerator of which shall be an amount equal to such Claim, and (b) the denominator of which shall be an amount equal to the aggregate amount of Allowed, Disputed and estimated Claims in the same Class as such Claim, except in cases where Pro Rata is used in reference to multiple Classes, in which case Pro Rata means the proportion that such Holder's Claim in a particular Class bears to the aggregate amount of all Allowed, Disputed and estimated Claims in such multiple Classes.

2.1.82    "*Professional*" means an Entity (a) employed pursuant to a Bankruptcy Court order in accordance with section 327, 363 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date pursuant to section 327, 328, 329, 330, 331 or 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

2.1.83    "*Professional Claim*" means an Administrative Claim for the compensation of a Professional and the reimbursement of expenses incurred by such Professional through the Confirmation Date.

2.1.84    "*Professional Fee Escrow Account*" means an account to be funded by the Reorganized Debtors upon the Effective Date in an amount equal to the Professional Fee Reserve Amount.

2.1.85    "*Professional Fee Order*" means the order entered by the Bankruptcy Court on February 18, 2016 establishing procedures for interim compensation and reimbursement of expenses of certain Professionals.

2.1.86    "*Professional Fee Reserve Amount*" means the aggregate amount of unpaid Professional Claims for all Professionals through the Confirmation Date as estimated, in the Debtors' reasonable discretion, in accordance with Section 3.4.3 herein.

---

[2]    The Plan Supplement may include, among other documents, the following: (a) the material Replacement Loan Documents; (b) the form of Reorganized Primorsk Certificate of Incorporation and other organizational documents of the Reorganized Debtors; (c) the Amended Management Agreements; (d) the identity and affiliations of each director and officer of the Reorganized Debtors, as well as the nature and amount of compensation of any director or officer who is an insider under section 101(31) of the Bankruptcy Code; and (e) a list of Specified Contracts. Any Plan Supplement documents filed after the Voting Deadline shall be in form and substance reasonably acceptable to each Approving Bondholder.

SC1:4030160.8

2.1.87    "*Proof of Claim*" means a proof of Claim filed against any of the Debtors in these Chapter 11 Cases.

2.1.88    "*Reinstated*" has the meaning pursuant to section 1124 and all other applicable sections of the Bankruptcy Code.

2.1.89    "*Released Parties*" means (a) the Exculpated Parties; (b) the Agents, in their capacity as such; (c) the Norwegian Bond Trustee, in its capacity as such; and (d) with respect to each Entity named in (b) and (c), such Entity's directors, officers, employees, agents, Affiliates, parents, subsidiaries, predecessors, successors, heirs, executors and assigns, attorneys, financial advisors, restructuring advisors, investment bankers, accountants and other professionals or representatives when acting in any such capacities.

2.1.90    "*Releasing Parties*" means (a) the Agents; (b) the Norwegian Bond Trustee; and (c) each Holder of a Claim or an Equity Interest that was provided a Ballot and (i) affirmatively votes to accept the Plan; or (ii) either (A) abstains from voting; or (B) votes to reject the Plan; and, in case of either (A) or (B), does not opt out of the Voluntary Release by Holders of Claims and Equity Interests in compliance with the instructions set forth in the Solicitation Materials.  For the avoidance of doubt, Holders who (i) were not provided a Ballot; and (ii) are not listed in clauses (a) – (c) above are not Releasing Parties.

2.1.91    "*Reorganized*" means, with respect to the Debtors, any Debtor or any successor thereto, by merger, consolidation, reorganization or otherwise, on or after the Effective Date.

2.1.92    "*Reorganized Debtors*" means the Debtors, as reorganized pursuant to and under the Plan, or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

2.1.93    "*Reorganized Primorsk*" means Primorsk, as reorganized pursuant to and under the Plan, or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

2.1.94    "*Reorganized Primorsk Certificate of Incorporation*" means the amended and restated Certificate of Incorporation of Reorganized Primorsk in the form set forth in the Plan Supplement.

2.1.95    "*Replacement Loans*" means the Tranche A Replacement Loans, the Tranche B Replacement Loans, and the Tranche C Replacement Loans.

2.1.96    "*Replacement Loan Documents*" means all loan and security documents, intercreditor agreements, and other documents and filings related to the Replacement Loans.

2.1.97    "*Schedules*" means the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed by the Debtors in these Chapter 11 Cases as amended from time to time.

- 10 -

2.1.98    *"Secured Agent"* means Nordea Bank Norge ASA, as agent and security trustee to the lenders pursuant to the Secured Loan Agreement.

2.1.99    *"Secured Claim"* means a Claim (a) secured by a Lien on property in which an Estate has an interest, to the extent such Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code and to the extent of the value of its Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed as such pursuant to the Plan.

2.1.100    *"Secured Loan Agreement"* means the loan agreement, dated as of January 2, 2008, among Primorsk, certain of Primorsk's subsidiaries, the Secured Agent and the banks, financial institutions and other lenders party thereto, as such agreement may be amended from time to time.

2.1.101    *"Securities Act"* means the United States Securities Act of 1933, as amended.

2.1.102    *"Security"* means a security as defined in section 2(a)(1) of the Securities Act.

2.1.103    *"Senior Secured Claim"* means any Claim arising under or in connection with the senior term loan facility pursuant to the Secured Loan Agreement.

2.1.104    *"Servicer"* means an indenture trustee, agent, servicer or other authorized representative of Holders of Claims or Equity Interests recognized by the Debtors or the Reorganized Debtors, as applicable.

2.1.105    *"Solicitation Materials"* means the solicitation package, including Ballots, authorized pursuant to the Solicitation Procedures Order.

2.1.106    *"Solicitation Procedures Order"* means the Order [(I) Approving the Disclosure Statement; (II) Establishing a Voting Record Date for the Plan; (III) Approving Solicitation Packages and Procedures for the Distribution Thereof; (IV) Approving the Forms of Ballots; (V) Establishing Procedures for Voting on the Plan; (VI) Establishing Notice and Objection Procedures for Confirmation of the Plan; and (VIII) Establishing Notice and Objection Procedures for the Assumption and Rejection of Executory Contracts and Unexpired Leases under the Plan], entered by the Bankruptcy Court on [_____], 2016 [Docket No. __], together with any supplemental order(s) that may be entered by the Bankruptcy Court in connection therewith.

2.1.107    *"Specified Contract"* means any Executory Contract or Unexpired Lease identified on the schedule of Executory Contracts and Unexpired Leases that are proposed to be rejected pursuant to the Plan.

2.1.108    *"Swap Agent"* means BNP Paribas, as facility agent to the lenders pursuant to the Swap Loan Agreement.

- 11 -

2.1.109    "*Swap Secured Claim*" means any Claim arising under or in connection with the Swap Loan Agreement.

2.1.110    "*Swap Loan Agreement*" means the secured loan agreement, dated as of June 7, 2011, among Primorsk, the Swap Agent and the banks, financial institutions and other lenders party thereto, as such agreement may be amended from time to time.

2.1.111    "*Tranche A Replacement Loans*" means a credit facility of Reorganized Primorsk to be issued in favor of the Holders of the Senior Secured Claims, with the material terms as set forth in Exhibit 2 attached hereto, as amended and modified by the Plan Supplement.

2.1.112    "*Tranche B Replacement Loans*" means a credit facility of Reorganized Primorsk to be issued in favor of the Holders of the Junior Secured Claims, with the material terms as set forth in Exhibit 2 attached hereto, as amended and modified by the Plan Supplement.

2.1.113    "*Tranche C Replacement Loans*" means a credit facility of Reorganized Primorsk to be issued in favor of the Holders of the Swap Secured Claims, with the material terms as set forth in Exhibit 2 attached hereto, as amended and modified by the Plan Supplement.

2.1.114    "*Unclaimed Distribution*" means any Distribution under the Plan on account of an Allowed Claim to a Holder that has not:  (a) accepted a particular Distribution or, in the case of a Distribution made by check, negotiated such check; (b) given written notice to the Distribution Agent of an intent to accept a particular Distribution; (c) responded in writing to the request of the Distribution Agent for information necessary to facilitate a particular Distribution; or (d) taken any other action necessary to facilitate such Distribution.

2.1.115    "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

2.1.116    "*Unimpaired*" means any Claim or Equity Interest that is not Impaired.

2.1.117    "*Unsecured Claim*" means any Claim that is not an (a) Administrative Claim, (b) Other Priority Claim, (c) Other Secured Claim, (d) Senior Secured Claim, (e) Junior Secured Claim, (f) Swap Secured Claim, (g) Equity Interest or (h) Intercompany Claim.

2.1.118    "*U.S. Trustee*" means the United States Trustee for Region 2.

2.1.119    "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

2.1.120    "*Voluntary Release by Holders of Claims and Equity Interests*" means the release by Holders of Claims and Equity Interests as set forth in Section 12.6 herein.

2.1.121    "*Voting*" means the process by which a Holder of a Claim may vote to accept or reject the Plan, pursuant to the conditions in Article 4 herein.

SC1:4030160.8

2.1.122    "*Voting Deadline*" means 8:00 p.m. (Eastern Time) on [_____], 2016, by which time all Ballots must be actually received by the Notice and Claims Agent.

2.2.    Rules of Interpretation

For the purposes of this Plan:  (a) any reference herein to the word "including" or word of similar import shall be read to mean "including without limitation"; (b) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (c) unless otherwise specified, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than a particular portion of the Plan; (d) captions and headings to Articles are inserted for the convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (e) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (f) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (g) all references to docket numbers of documents filed in these Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (h) all references to statutes, regulations, orders, rules of courts and the like shall mean as amended from time to time, and as applicable to these Chapter 11 Cases, unless otherwise stated; (i) any reference herein to a contract, agreement, lease, plan, policy, document or instrument being in a particular form or on particular terms and conditions means that the same shall be substantially in that form or substantially on those terms and conditions; (j) any reference herein to a contract, agreement, lease, plan, policy, document or instrument or schedule or exhibit thereto, whether or not filed, shall mean the same as amended, restated, modified or supplemented from time to time in accordance with the terms hereof or thereof; (k) any immaterial effectuating provisions may be interpreted by the Debtors and the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan, all without further Bankruptcy Court order; (l) any reference to an Entity as a Holder of a Claim or Equity Interest includes that Entity's successors and permitted assigns; (m) except as otherwise expressly provided in this Plan, where this Plan contemplates that any Debtor or Reorganized Debtor shall take any action, incur any obligation, issue any security or adopt, assume, execute or deliver any contract, agreement, lease, plan, policy, document or instrument on or prior to the Effective Date, the same shall be duly and validly authorized by the Plan and effective against and binding upon such Debtor and/or Reorganized Debtor, as applicable, on and after the Effective Date without further notice to, order of or other approval by the Bankruptcy Court, action under applicable law, regulation, order or rule, or the vote, consent, authorization or approval of the board of directors of any Debtor or Reorganized Debtor or any other Entity; and (n) except as otherwise provided in the Plan, anything required to be done by the Debtors or the Reorganized Debtors, as applicable, on the Effective Date may be done on the Effective Date or as soon as reasonably practicable thereafter.

2.3.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflicts of laws, shall govern the construction and implementation of the Plan and any agreement, document or instrument executed or entered into in connection with the Plan.

SC1:4030160.8

2.4.    <u>Computation of Time</u>

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

SC1:4030160.8

3. **GENERAL ADMINISTRATIVE CLAIMS, PROFESSIONAL CLAIMS AND UNITED STATES TRUSTEE STATUTORY FEES**

In accordance with section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify General Administrative Claims and Professional Claims, payment of which is provided for below.

3.1.    Administrative Claim Bar Date

Any request for payment of a General Administrative Claim must be filed and served on the Reorganized Debtors pursuant to the procedures specified in the notice of entry of the Confirmation Order and the Confirmation Order on or prior to the Administrative Claim Bar Date; *provided* that no request for payment is required to be filed and served with respect to any:

(a)    Allowed Administrative Claim as of the Administrative Claim Bar Date;

(b)    Ordinary Course General Administrative Claim;

(c)    Professional Claim; or

(d)    Claim for U.S. Trustee Fees.

Any Holder of a General Administrative Claim who is required to, but does not, file and serve a request for payment of such General Administrative Claim pursuant to the procedures specified in the Confirmation Order on or prior to the Administrative Claim Bar Date shall be forever barred, estopped and enjoined from asserting such General Administrative Claim against the Debtors or the Reorganized Debtors or their respective property, and such General Administrative Claim shall be deemed discharged as of the Effective Date.

Any objection to a request for payment of a General Administrative Claim that is required to be filed and served pursuant to this Section 3.1 must be filed and served on the Reorganized Debtors and the requesting party creditor (a) no later than 90 days after the Administrative Claim Bar Date or (b) by such later date as may be established by order of the Bankruptcy Court upon a motion by a Reorganized Debtor, with notice only to those parties entitled to receive notice pursuant to Bankruptcy Rule 2002.

3.2.    General Administrative Claims

Except to the extent that a Holder of an Allowed General Administrative Claim agrees to less favorable treatment, the Holder of each Allowed General Administrative Claim shall receive Cash in an amount equal to the full unpaid amount of such Allowed General Administrative Claim on the later of (a) the Effective Date or as soon as reasonably practicable thereafter, (b) the date on which such Claim is Allowed or as soon as reasonably practicable thereafter, or (c) with respect to Ordinary Course General Administrative Claims, the date such amount is due in accordance with applicable non-bankruptcy law and the terms and conditions of any applicable agreement or instrument.

SC1:4030160.8

3.3.    Professional Claims

3.3.1    Final Fee Applications.  All final requests for payment of Professional Claims shall be filed and served no later than 60 days after the Effective Date, in the manner set forth in the Professional Fee Order or, as it relates to APS, in the APS Retention Order.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims.

3.3.2    Professional Fee Escrow Amount.  The Debtors shall establish and fund on or prior to the Effective Date the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount.  The Professional Fee Escrow Account shall be maintained in trust for the Professionals.  Except as provided in the last sentence of this paragraph, such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors, as applicable.  The Reorganized Debtors shall pay Professional Claims in Cash as soon as reasonably practicable after such Claims are Allowed by order of the Bankruptcy Court.  When all Allowed Professional Claims have been paid in full, amounts remaining in the Professional Fee Escrow Account, if any, shall revert to the Reorganized Debtors.

3.3.3    Professional Fee Reserve Amount.  Professionals shall provide good faith estimates of their Professional Claims for purposes of the Professional Fee Escrow Account and shall deliver such estimates to the Debtors no later than 10 days prior to the Confirmation Hearing; *provided* that such estimates shall not be considered an admission or limitation with respect to the fees and expenses of such Professionals.  If a Professional does not provide such an estimate, the Reorganized Debtors may estimate, in their reasonable discretion, the Professional Claims of such Professional.

3.3.4    Post-Effective Date Fees and Expenses.  Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtors or the Reorganized Debtors, as the case may be, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional or other fees and expenses.  Except as otherwise specifically provided in the Plan, upon the Effective Date, any requirement that Professionals comply with section 327, 328, 329, 330, 331 or 1103 of the Bankruptcy Code or the Professional Fee Order (or, as it relates to APS, the APS Retention Order) in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business.

3.4.    Statutory Fees Payable Pursuant to 28 U.S.C. § 1930

The Debtors or the Reorganized Debtors, as applicable, shall pay all U.S. Trustee Fees for each quarter (including any fraction thereof) until these Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

SC1:4030160.8

4.    **CLASSIFICATION, TREATMENT AND VOTING OF CLAIMS AND EQUITY INTERESTS**

    4.1.    Classification of Claims and Equity Interests

All Claims and Equity Interests, except for Administrative Claims and Professional Claims, are classified in the Classes set forth in this Article 4.  A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest qualifies within the description of such other Classes. A Claim or Equity Interest also is classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is Allowed as a Claim or Equity Interest in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date.

    4.1.1    Deemed Substantive Consolidation.  The Plan shall serve as a motion by the Debtors seeking entry of a Bankruptcy Court order deeming the substantive consolidation of the Debtors' Estates into a single Estate for certain limited purposes related to the Plan, including Voting, Confirmation and Distribution.  As a result of the deemed substantive consolidation of the Estates, each Class of Claims and Equity Interests will be treated as against a single consolidated Estate without regard to the separate legal existence of the Debtors.  The Plan will not result in the merger or otherwise affect the separate legal existence of each Debtor, other than with respect to voting and distribution rights under the Plan.

    4.1.2    Summary of Classification and Treatment.  The classification of Claims and Equity Interests pursuant to the Plan is as follows:

| Class | Claims and Equity Interests | Status | Voting Rights |
|:---:|:---:|:---:|:---:|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3A | Senior Secured Claims | Impaired | Entitled to Vote |
| 3B | Junior Secured Claims | Impaired | Entitled to Vote |
| 3C | Swap Secured Claims | Impaired | Entitled to Vote |
| 4 | Norwegian Bond Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Equity Interests in Primorsk | Impaired | Entitled to Vote |

    4.2.    Treatment of Claims and Equity Interests

        4.2.1    Class 1 – Other Priority Claims

        (a)    *Classification*:  Class 1 consists of all Other Priority Claims.

        (b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange

- 17 -

for its Allowed Other Priority Claim, each Holder of such Allowed Other Priority Claim shall be paid in full in Cash on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date on which such Other Priority Claim becomes Allowed, and (iii) such other date as may be ordered by the Bankruptcy Court.

(c)    *Voting*:  Class 1 is Unimpaired.  Each Holder of an Other Priority Claim is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  No Holder of Other Priority Claims is entitled to vote to accept or reject the Plan.

### 4.2.2    Class 2 – Other Secured Claims

(a)    *Classification*:  Class 2 consists of Other Secured Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive one of the following treatments, in the sole discretion of the applicable Debtor:  (i) payment in full in Cash including the payment of any interest payable under section 506(b) of the Bankruptcy Code; (ii) delivery of the collateral securing such Allowed Other Secured Claim; or (iii) treatment of such Allowed Other Secured Claim in any other manner that renders the Claim Unimpaired.

(c)    *Voting*:  Class 2 is Unimpaired.  Each Holder of an Other Secured Claim is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  No Holder of an Other Secured Claim is entitled to vote to accept or reject the Plan.

### 4.2.3    Class 3A – Senior Secured Claims

(a)    *Classification*:  Class 3 consists of all Senior Secured Claims.

(b)    *Allowance*:  The Senior Secured Claims shall be Allowed in an aggregate amount equal to $194,269,474, representing principal and accrued and unpaid interest at the non-default contractual rate up to and including the Petition Date.

(c)    *Treatment*:  Except to the extent that a Holder of an Allowed Senior Secured Claim agrees to a less favorable treatment, and in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed Senior Secured Claim, each Holder of an Allowed Senior Secured Claim shall receive its Pro Rata share of the Tranche A Replacement Loans; *provided*, *however*, if

Classes 3A, 3B and 3C all vote to accept the Plan, each Holder of an Allowed Senior Secured Claim shall receive its Pro Rata share of the Amortizing Tranche A Replacement Loans in addition to the other Amortizing payments as set forth in Exhibit 2 attached hereto, as amended and modified by the Plan Supplement; in each case with such modifications, if any, as the Debtors may determine to be appropriate in light of the requirements of section 1129(b) of the Bankruptcy Code.

(d)    *Voting*:  Class 3A is Impaired and each Holder of a Senior Secured Claim is entitled to vote to accept or reject the Plan.

### 4.2.4    Class 3B – Junior Secured Claims

(a)    *Classification*:  Class 3B consists of all Junior Secured Claims.

(b)    *Allowance*:  The Junior Secured Claims shall be Allowed in an aggregate amount equal to $51,625,000, representing principal and accrued and unpaid interest at the non-default contractual rate up to and including the Petition Date.

(c)    *Treatment*:  Except to the extent that a Holder of an Allowed Junior Secured Claim agrees to a less favorable treatment, and in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed Junior Secured Claim, each Holder of an Allowed Junior Secured Claim shall receive its Pro Rata share of the Tranche B Replacement Loans; *provided*, *however*, if Classes 3A, 3B and 3C all vote to accept the Plan, the Tranche A Replacement Loans shall be Amortizing and the Applicable Margin of the Tranche B Replacement Loans shall be 1.75%, and if any of Class 3A, 3B or 3C votes to reject the Plan, the Tranche A Replacement Loans shall not be Amortizing and the Applicable Margin of the Tranche B Replacement Loans shall be 2.00%; in each case with such modifications, if any, as the Debtors may determine to be appropriate in light of the requirements of section 1129(b) of the Bankruptcy Code.

(d)    *Voting*:  Class 3B is Impaired and each Holder of a Junior Secured Claim is entitled to vote to accept or reject the Plan.

### 4.2.5    Class 3C – Swap Secured Claims

(a)    *Classification*:  Class 3C consists of all Swap Secured Claims.

(b)    *Allowance*:  The Swap Secured Claims shall be Allowed in an aggregate amount equal to $16,400,988, representing principal and accrued and unpaid interest at the non-default contractual rate up to and including the Petition Date.

- 19 -

(c)    *Treatment*:  Except to the extent that a Holder of an Allowed Swap Secured Claim agrees to a less favorable treatment, and in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed Swap Secured Claim, each Holder of an Allowed Swap Secured Claim shall receive its Pro Rata share of the Tranche C Replacement Loans; *provided, however*, if Classes 3A, 3B and 3C vote to accept the Plan, the Tranche A Replacement Loans shall be Amortizing and the Applicable Margin of the Tranche C Replacement Loans shall be 2.00%, and if any of Class 3A, 3B or 3C votes to reject the Plan, the Tranche A Replacement Loans shall not be Amortizing and the Applicable Margin of the Tranche C Replacement Loans shall be 2.25%; in each case with such modifications, if any, as the Debtors may determine to be appropriate in light of the requirements of section 1129(b) of the Bankruptcy Code.

(d)    *Voting*:  Class 3C is Impaired and each Holder of a Swap Secured Claim is entitled to vote to accept or reject the Plan.

4.2.6    Class 4 – Norwegian Bond Claims

(a)    *Classification*:  Class 4 consists of all Norwegian Bond Claims.

(b)    *Allowance*:  The Norwegian Bond Claims shall be Allowed in an aggregate amount equal to $80,868,077.

(c)    *Treatment*:  Except to the extent that a Holder of an Allowed Norwegian Bond Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Norwegian Bond Claim, each Holder of an Allowed Norwegian Bond Claim shall receive its Pro Rata share of the New Class B Common Stock.

(d)    *Voting*:  Class 4 is Impaired and each Holder of a Norwegian Bond Claim is entitled to vote to accept or reject the Plan.

4.2.7    Class 5 – General Unsecured Claims

(a)    *Classification*:  Class 5 consists of all General Unsecured Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, on the later of the Effective Date or as soon as practicable after a General Unsecured Claim becomes Allowed, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive payment in Cash

SC1:4030160.8

in an amount equal to 75 percent of such Allowed General
Unsecured Claim.

(c)    *Voting*:  Class 5 is Impaired and each Holder of a General
Unsecured Claim is entitled to vote to accept or reject the Plan.

### 4.2.8    Class 6 – Equity Interests in Primorsk

(a)    *Classification*:  Class 6 consists of all Equity Interests in Primorsk.

(b)    *Treatment*:  Except to the extent that a Holder of an Equity Interest
in Primorsk agrees to a less favorable treatment, in full and final
satisfaction, settlement, release, and discharge of and in exchange
for its portion of the Equity Interests in Primorsk, each Holder of
an Equity Interest in Primorsk shall receive its Pro Rata share of
the New Class A Common Stock.

(c)    *Voting*:  Class 6 is Impaired and each Holder of an Equity Interest
in Primorsk is entitled to vote to accept or reject the Plan.

### 4.3.    Intercompany Claims and Interests

Notwithstanding anything herein to the contrary, on the Effective Date or as soon
thereafter as is reasonably practicable, at the option of the Reorganized Debtors, all
Intercompany Claims and Intercompany Interests will be:  (a) preserved and reinstated, in full or
in part; (b) canceled and discharged, in full or in part, in which case such discharged and
satisfied portion shall be eliminated and the Holders thereof shall not be entitled to, and shall not
receive or retain, any property or interest in property on account of such portion under the Plan;
(c) eliminated or waived based on accounting entries in the Debtors' or the Reorganized Debtors'
books and records and other corporate activities by the Debtors or the Reorganized Debtors;
(d) contributed to the capital of the obligor entity; or (e) otherwise compromised.  In no event
shall Intercompany Claims be allowed as General Unsecured Claims or entitled to any
Distribution under the Plan.

### 4.4.    Special Provision Governing Unimpaired Claims

Except as otherwise provided herein, the Plan shall not affect the Debtors' or the
Reorganized Debtors' rights in respect of any Unimpaired Claims, including legal and equitable
defenses or setoff or recoupment rights with respect thereto.

### 4.5.    Confirmation Pursuant to Sections 1129(a) and 1129(b) of the Bankruptcy Code

For purposes of Confirmation, section 1129(a)(10) of the Bankruptcy Code shall
be satisfied if any one of Classes 3 – 5 accepts the Plan.  The Debtors shall seek Confirmation of
the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class
or Classes of Claims.

5.    **IMPLEMENTATION OF THE PLAN**

5.1.    Operations Between the Confirmation Date and Effective Date

During the period from the Confirmation Date through and until the Effective Date, the Debtors may continue to operate their businesses as debtors-in-possession, subject to all applicable orders of the Bankruptcy Court.

5.2.    Other Restructuring Transactions

Following the Confirmation Date, the Debtors may reorganize their corporate structure by eliminating certain entities (including non-Debtor entities) that are deemed no longer helpful, and may take all actions as may be necessary or appropriate to effect such transactions, including any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, including: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, liquidation, domestication, continuation or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any property, right, liability, debt or obligation on terms consistent with the terms of the Plan; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution with the appropriate governmental authorities pursuant to applicable law; and (d) all other actions that the Debtors determine are necessary or appropriate, including making filings or recordings that may be required by applicable law. Notwithstanding anything else to the contrary herein, the Debtors may engage in any restructuring, reorganizations, liquidation, intercompany sales and similar transactions in order to implement tax planning.

5.3.    Vesting of Assets in the Reorganized Debtors

Except as otherwise provided herein or in the Confirmation Order, as of the Effective Date, all property of each Estate (including Causes of Action) and any property acquired by any Debtor under the Plan shall vest in the applicable Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances or interests to the extent permitted by section 1141 of the Bankruptcy Code; *provided* that nothing in this Section 5.3 shall limit the ability under the Bankruptcy Code of any party-in-interest to object to any Claim prior to the Claims Objection Bar Date unless otherwise ordered by the Bankruptcy Court. For the avoidance of doubt, the immediately preceding sentence does not apply to any property of a non-Debtor Affiliate of the Debtors. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtors may operate their businesses and may use, acquire or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

5.4.    Cancelation of Existing Agreements, Notes and Equity Interests

On the Effective Date, except as otherwise specifically provided for in the Plan, the Secured Loan Agreement, Swap Loan Agreement, Norwegian Bond Indenture and any other

Certificate, Equity Interest, share, note, bond, indenture, purchase right, option, warrant, intercreditor agreement or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors or giving rise to any Claim or Equity Interest (except such Certificates, notes or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan), shall be canceled, and the Reorganized Debtors and their Affiliates shall not have any obligations thereunder and shall be released and discharged therefrom.

5.5.    New Common Stock

On the Effective Date, the Reorganized Primorsk Certificate of Incorporation shall have provided for the authorization of the New Common Stock.  The shares of New Common Stock issued in connection with the Plan shall be authorized without the need for further corporate action or without any further action by any Person, and once issued, shall be duly authorized, validly issued, fully paid and non-assessable.

Any share of New Common Stock issued to a creditor of any Debtor that is not Primorsk shall be treated as (a) a contribution of cash by Reorganized Primorsk to the applicable Debtor in the amount equal to the fair market value of such New Common Stock, followed by (b) the issuance of New Common Stock by Reorganized Primorsk to the applicable Debtor in return for such cash, followed by (c) the transfer of the New Common Stock by the applicable Debtor to the applicable creditor.

5.6.    Exemption from Registration

Except with respect to any Person that is an underwriter as defined in section 1145(b) of the Bankruptcy Code, the offer, issuance, sale or distribution under the Plan of the shares of New Common Stock shall all be exempt from registration under Section 5 of the Securities Act (or any state or local law requiring registration for offer or sale of a security) and under section 1145 of the Bankruptcy Code.

5.7.    Replacement Loans

Confirmation of the Plan shall be deemed (a) approval of the Replacement Loans and all transactions contemplated hereby and thereof, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, and (b) authorization for the Reorganized Debtors to enter into and perform under the Replacement Loan Documents.  The Replacement Loan Documents shall constitute legal, valid, binding and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms.

On the Effective Date, all of the liens and security interests to be granted in accordance with the Replacement Loan Documents (a) shall be deemed to be approved; (b) shall be legal, binding and enforceable liens on, and security interests in, the collateral granted under the respective Replacement Loan Documents in accordance with the terms of the Replacement Loan Documents; (c) shall be deemed perfected on the Effective Date, subject only to such liens and security interests as may be permitted under the Replacement Loan Documents, and the priorities of such liens and security interests shall be as set forth in the respective Replacement Loan Documents; and (d) shall not be subject to avoidance, recharacterization, or subordination

(including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Debtors and the parties under such Replacement Loan Documents are hereby authorized to make all filings and recordings, and to obtain all governmental approvals and consents to establish and perfect such liens and security interests under the provisions of the applicable federal or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection of such liens and security interests granted under the Replacement Loan Documents shall occur automatically by virtue of the entry of the Confirmation Order and funding on or after the Effective Date, and any such filings, recordings, approvals and consents shall not be necessary or required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.  To the extent that any Holder of a Secured Claim that has been satisfied or discharged pursuant to the Plan, or any agent of such Holder, has filed or recorded any liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent of such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors or any administrative agent under the Replacement Loan Documents that are necessary to cancel and/or extinguish such liens and/or security interests (it being understood that such liens and security interests shall be automatically canceled and/or extinguished automatically on the Effective Date by virtue of the entry of the Confirmation Order).

5.8.   Section 1146 Exemption from Certain Transfer Taxes and Recording Fees

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any transfers from the Debtors to the Reorganized Debtors or to any other Person, pursuant to, in contemplation of, or in connection with the Plan (including any transfer pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors; (b) the creation, modification, consolidation, assumption, termination, refinancing and/or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment or recording of any lease or sublease; or (d) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales and use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall, and shall be directed to, forgo the collection of any such tax, recordation fee or government assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or government assessment.  The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

SC1:4030160.8

5.9.    Preservation of Causes of Action

Except as otherwise provided in Article 12 or 16 herein or the other provisions of the Plan, each Cause of Action of a Debtor shall be preserved and, along with the exclusive right to enforce such Cause of Action, shall vest exclusively in the applicable Reorganized Debtor as of the Effective Date; *provided* that nothing in this Section 5.9 shall limit the ability under the Bankruptcy Code of any party-in-interest to object to any Claim prior to the Claims Objection Bar Date unless otherwise ordered by the Bankruptcy Court.  Unless a Cause of Action is expressly waived, relinquished, released or compromised in the Plan or an order of the Bankruptcy Court, the Reorganized Debtors expressly reserve such Cause of Action for later adjudication and, accordingly, no doctrine of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), laches or other preclusion doctrine shall apply to such Cause of Action as a consequence of the Confirmation, the Plan, the vesting of such Cause of Action in the Reorganized Debtors, any order of the Bankruptcy Court or these Chapter 11 Cases.  **No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue such Cause of Action.**

5.10.    Effectuating Documents and Further Transactions

The Debtors or the Reorganized Debtors, as applicable, may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, including the distribution of the securities to be issued pursuant hereto in the name of, and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, actions or consents except for those expressly required pursuant hereto.  The secretary and any assistant secretary of each Debtor shall be authorized to certify or attest to any of the foregoing actions.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the shareholders, directors or members of the Debtors shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to applicable law, and without any requirement of further action by the shareholders, directors, managers or partners of the Debtors, or the need for any approvals, authorizations, actions or consents.

5.11.    Reinstatement of Interests in Debtor Subsidiaries

In the event that the Debtors elect to reinstate Intercompany Interests pursuant to Section 4.3 herein, each Reorganized Debtor may issue authorized new equity securities to the Reorganized Debtor that was that Debtor's corporate parent prior to the Effective Date so that each Reorganized Debtor will retain its 100% ownership of its pre-Petition Date Debtor Subsidiaries.

5.12.    Intercompany Account Settlement

The Debtors and Reorganized Debtors, and their respective subsidiaries, will be entitled to transfer funds between and among themselves as they determine to be necessary or

appropriate to enable the Debtors or Reorganized Debtors (as applicable) to satisfy their obligations under the Plan.

      5.13.   Fees and Expenses of the Agents and Norwegian Bond Trustee

      Reasonable and documented fees and expenses incurred by the Agents during the pendency of these Chapter 11 Cases, solely in their capacity as such, shall, without duplication and to the extent unpaid by the Debtors prior to the Effective Date, be Allowed Administrative Claims and paid by the Reorganized Debtors without further Bankruptcy Court approval upon the submission of invoices to the Reorganized Debtors and the U.S. Trustee.  Reasonable and documented fees and expenses incurred by the Norwegian Bond Trustee during the pendency of these Chapter 11 Cases, solely in its capacity as such, shall, without duplication, be paid as Allowed Administrative Claims by the Reorganized Debtors on the Effective Date of the Plan, subject to approval by the Bankruptcy Court.

SC1:4030160.8

## 6.    CORPORATE GOVERNANCE AND MANAGEMENT

### 6.1.    Corporate Existence

Subject to any restructuring transactions as permitted under Article 5 herein or as otherwise expressly provided herein, each of the Debtors shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership or other form, as the case may be, pursuant to applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed, and pursuant to the respective certificate of incorporation and bylaws (or other formation documents in the case of a limited liability company, partnership or other form) in effect prior to the Effective Date, except to the extent such certificates of incorporation or bylaws (or other formation documents in the case of a limited liability company, partnership or other form) are amended by, or in connection with, the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be authorized pursuant hereto and without the need for any other approvals, authorizations, actions or consents.

### 6.2.    Organizational Documents

The Reorganized Primorsk Certificate of Incorporation shall be filed with the Registrar of Companies and Official Receiver (D.R.C.O.R.) of the Republic of Cyprus on the Effective Date on or prior to the Effective Date.  The amended and restated bylaws of Reorganized Primorsk and certificates of incorporation and bylaws of the other Reorganized Debtors (or other formation documents relating to limited liability companies, partnerships or other forms) shall be in the form set forth in the Plan Supplement and filed with the applicable state officers or entities on or as soon as reasonably practicable after the Effective Date.

### 6.3.    Indemnification Provisions in Organizational Documents

As of the Effective Date, each Reorganized Debtor's bylaws or articles of association shall provide for the indemnification, defense, reimbursement, exculpation and/or limitation of liability of, and advancement of fees and expenses to, directors or officers of such Debtor who served in such capacity after the Petition Date, at least to the same extent as the bylaws or articles of association of each of the respective Debtors did on the Petition Date, against any claims or Causes of Action, whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and none of the Reorganized Debtors shall amend and/or restate their certificates of incorporation, bylaws or articles of association before or after the Effective Date to terminate or materially adversely affect any of these obligations of the Reorganized Debtors' or such directors', officers', employees' or agents' rights.

### 6.4.    Directors and Officers of the Reorganized Debtors

The identity and affiliations of each individual proposed to serve as a director, officer or voting trustee of any Reorganized Debtor after the Effective Date will be disclosed in the Plan Supplement no later than the Confirmation Hearing.

SC1:4030160.8

7.    **COMPENSATION AND BENEFITS PROGRAMS**

7.1.    Continuing Compensation and Benefits Programs

On the Effective Date, with respect to all Continuing Compensation and Benefits Programs, each Reorganized Debtor shall assume and continue to honor in accordance with their terms and applicable laws and perform all Continuing Compensation and Benefits Programs to which the applicable Debtor is party, subject to any rights to terminate or modify such plans.

The Debtors' or Reorganized Debtors' performance under any employment agreement will not entitle any person to any benefit or alleged entitlement under any contract, agreement, policy, program or plan that has expired or been terminated before the Effective Date, or restore, reinstate or revive any such benefit or alleged entitlement under any such contract, agreement, policy, program or plan, and any Continuing Compensation and Benefits Programs shall be subject to modification in accordance with their terms. Nothing herein shall limit, diminish or otherwise alter the Debtors' or the Reorganized Debtors' defenses, claims, Causes of Action or other rights with respect to any such contracts, agreements, policies, programs and plans, including the Reorganized Debtors' rights to modify unvested benefits pursuant to their terms, nor shall confirmation of the Plan and/or consummation of any restructuring transactions constitute a change in control or change in ownership under any such contracts, agreements, policies, programs and plans.

7.2.    New Management Agreements

The Management Agreements shall be rejected pursuant to the Plan. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejection of the Management Agreements, with such rejection being deemed effective upon and contingent on the Consummation of the Plan.

On the Effective Date, the Reorganized Debtors and Prisco shall enter into the New Management Agreements. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the Reorganized Debtors' entry into the New Management Agreements, with such entry being deemed effective upon and contingent on the Consummation of the Plan.

7.3.    Compensation Arrangements with APS

On the Effective Date, Reorganized Primorsk shall assume, and continue to honor and perform, any compensation agreements with APS in connection with its role and specifically in connection with its provision of a chief restructuring officer.

SC1:4030160.8

8.    **TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

    8.1.    Assumption of Executory Contracts and Unexpired Leases

        Except as otherwise provided herein, all Executory Contracts and Unexpired Leases will be assumed by the Plan on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code, other than (a) Executory Contracts or Unexpired Leases previously assumed or rejected pursuant to an order of the Bankruptcy Court, (b) Executory Contracts or Unexpired Leases that are the subject of a motion to reject that is pending on the Effective Date and (c) Specified Contracts that Primorsk elects to reject pursuant to the Plan.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumption of such Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code.

    8.2.    Rejection of Specified Contracts

        Any counterparty to a Specified Contract that fails to object timely to the proposed rejection of such Specified Contract will be deemed to have consented to the rejection on the terms provided in the notice, and entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejection under such Specified Contract pursuant to sections 365 and 1123 of the Bankruptcy Code.

    8.3.    Claims Against the Debtors Upon Rejection

        No Executory Contract or Unexpired Lease rejected by the Debtors on or prior to the Effective Date shall create any obligation or liability of the Debtors or the Reorganized Debtors that is not a Claim.  Any Proof of Claim arising from or relating to the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan must be filed with the Bankruptcy Court within 30 days after the Effective Date, unless rejected at a later date as a result of a disputed assumption, assignment or cure amount as set forth in Section 8.5 herein.  Any Claim arising from or relating to the rejection of an Executory Contract or Unexpired Lease that is not filed with the Bankruptcy Court within such time will be automatically disallowed, and forever barred from assertion, and shall not be enforceable against the Debtors, the Reorganized Debtors or any of their property.  Any Allowed Claim arising from the rejection of an Executory Contract or Unexpired Lease shall be classified as an General Unsecured Claim, and shall be treated in accordance with Section 4.2 herein.

    8.4.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases

        Except to the extent that less favorable treatment has been agreed to by the non-Debtor party or parties to each Executory Contract or Unexpired Lease to be assumed pursuant to the Plan, any monetary defaults arising under such Executory Contract or Unexpired Lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amounts in full in Cash on the later of 30 days after: (a) the Effective Date; or (b) the date on which any dispute relating to such Cure Amounts has been resolved, either consensually or by order of the Bankruptcy Court.

No later than 10 calendar days prior to the deadline to file objections to the Plan, the Debtors shall file the Cure Schedule and serve the Cure Notices on each applicable counterparty. Any such counterparty that fails to object to the proposed assumption of the applicable Executory Contract or Unexpired Lease and the applicable Cure Amounts listed on the Cure Notice by the deadline to file objections to the Plan shall be forever barred, estopped and enjoined from disputing the assumption of the applicable Executory Contract or Unexpired Lease and the Cure Amounts listed on the Cure Notice (including a Cure Amount of $0.00) and/or asserting any Claim against the applicable Debtor or Reorganized Debtor arising under section 365(b)(1) of the Bankruptcy Code.

In the event of a dispute regarding (a) the Cure Amounts; (b) the ability of the applicable Reorganized Debtor to provide adequate assurance of future performance in accordance with section 365 of the Bankruptcy Code under the Executory Contract or Unexpired Lease to be assumed; or (c) any other matter pertaining to the proposed assumption, the proposed Cure Amounts shall be made following the entry of a Final Order resolving such dispute and approving the assumption of such Executory Contract or Unexpired Lease. To the extent such a dispute relates solely to the Cure Amounts, the applicable Debtor may assume the applicable Executory Contract or Unexpired Lease prior to the resolution of such dispute, *provided* that such Debtor reserves Cash in an amount sufficient to pay the Cure Amounts. To the extent any dispute is resolved or determined against the applicable Debtor or Reorganized Debtor, as applicable, such Debtor or Reorganized Debtor, as applicable, may reject the applicable Executory Contract or Unexpired Lease after such determination, and the counterparty may thereafter file a proof of claim in the manner set forth in Section 8.3 herein.

8.5.    Effect of Assumption

Assumption of any Executory Contract or Unexpired Lease, pursuant to the Plan or otherwise, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, and the deemed waiver of any termination right or remedial provision arising under any such Executory Contract or Unexpired Lease at any time prior to the effective date of its assumption, or as a result of such assumption, the transactions contemplated by the Plan or any changes in control or ownership of any Debtors during these Chapter 11 Cases as a result of the implementation of the Plan. Notwithstanding the foregoing, with respect to Executory Contracts with customers of the Debtors that are assumed pursuant to the Plan, the Reorganized Debtors shall remain obligated to honor any obligations set forth in such contracts to provide rebates or discounts, to the extent such rebates or discounts accrued but are not yet due under the terms of such contracts, in the ordinary course of business. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged without further notice to, or action, order or approval of, the Bankruptcy Court, except in the event that the applicable Debtor and the counterparty to an Executory Contract or Unexpired Lease have separately agreed to a waiver or reduction of obligations that would otherwise constitute cure obligations, subject to the counterparties' explicit retention of their rights to assert any such amounts as General Unsecured Claims.

Each Executory Contract and Unexpired Lease assumed pursuant to this Article 8 or any order of the Bankruptcy Court shall vest in, and be fully enforceable by, the applicable

Reorganized Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court.

8.6.    Modification, Amendments, Supplements, Restatements or Other Agreements

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed or rejected shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or are rejected or repudiated under the Plan.

Modifications, amendments, supplements and restatements to Prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during these Chapter 11 Cases shall not be deemed to alter the Prepetition nature of such Executory Contract or Unexpired Leases or the validity, priority or amount of any Claims that may arise in connection therewith.

8.7.    Reservation of Rights

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease as a Specified Contract, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease, or that any Reorganized Debtor has any liability thereunder.

8.8.    Contracts and Leases Entered Into After the Petition Date

Each Reorganized Debtor will perform its obligations under each contract and lease entered into by such Reorganized Debtor after the Petition Date, including any Executory Contract and Unexpired Lease assumed by such Reorganized Debtor, in each case, in accordance with and subject to the then-applicable terms.  Accordingly, such contracts and leases (including any assumed Executory Contracts or Unexpired Leases) will survive and remain unaffected by the entry of the Confirmation Order.

SC1:4030160.8

9.    **PROVISIONS GOVERNING DISTRIBUTIONS**

9.1.    Distributions

Beginning on the Distribution Date, the Distribution Agent shall make Distributions under the Plan on account of each Claim that is Allowed on or prior to the Effective Date.

The Agents shall be deemed to be the holder of all Senior Secured Claims (in the case of the Secured Agent), all Junior Secured Claims (in the case of the Secured Agent) and all Swap Secured Claims (in the case of the Swap Agent), and all Distributions on account of such claims shall be made to or on behalf of the Agents.  The Agents shall hold or direct such Distributions for the benefit of the holders of such claims.  As soon as practicable following compliance with the other requirements set forth in this Article 9, the Agents shall arrange to deliver such Distributions to, or on behalf of, the holders of such claims.  Any such Distributions that are Unclaimed Distributions for a period of six months shall be deemed unclaimed property and shall revest in the Reorganized Debtors in accordance with Section 9.6 herein.  The Agents shall promptly report to the Reorganized Debtors any Unclaimed Distributions six months after receipt of any Distribution.  For the avoidance of doubt, the Agents shall only be required to act to make Distributions in accordance with the terms of the Plan.  The Debtors' obligations to make Distributions to the Holders of the Senior Secured Claims, the Junior Secured Claims and the Swap Secured Claims in accordance with Article 4 herein shall be deemed satisfied upon delivery of Distributions to the Agents, or if the consent of the Agents is given, to the Distribution Agent on behalf of the Agents, as provided for herein.

In accordance with Section 9.3 herein, all Distributions on account of Allowed Norwegian Bond Claims shall be made by the Distribution Agent to Nordea Securities Services as custodian for the Norwegian Bonds for the account of the applicable Holders of such Allowed Norwegian Bond Claims.  Nordea Securities Services shall make all Distributions to the Holders of the Allowed Norwegian Bond Claims in accordance with its applicable policies and procedures.  Any such Distributions that constitute Unclaimed Distributions for a period of six months shall be deemed unclaimed property within the meaning of section 347(b) of the Bankruptcy Code, and shall revest in the Reorganized Debtors in accordance with Section 9.6 herein.  Nordea Securities Services shall promptly report to the Distribution Agent any Unclaimed Distributions six months after receipt of any Distribution.

9.2.    Record Date and Delivery of Distributions

9.2.1    Record Date for Distributions.  On the Distributions Record Date, the Claims Register shall be closed and the Distribution Agent shall be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distributions Record Date.  If a Claim, other than one based on a publicly traded security, is transferred 20 or fewer days before the Distributions Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical, and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

SC1:4030160.8

9.2.2     Delivery of Distributions in General.  Except as otherwise provided herein, the Distribution Agent shall make all Distributions required under the Plan to Holders of Allowed Claims, except that distributions to Holders of Allowed Claims governed by a separate agreement and administered by a Servicer shall be deposited with the appropriate Servicer, at which time such distributions shall be deemed complete, and the Servicer shall deliver such distributions in accordance with the Plan and the terms of the governing agreement.  Except as otherwise provided herein, and notwithstanding any authority to the contrary, Distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distributions Record Date by the Distribution Agent or a Servicer, as appropriate: (a) to the signatory set forth on any of the Proofs of Claim filed by such Holder or other representative identified therein (or at the last known address of such Holder if no Proof of Claim is filed or if the Debtors, the Reorganized Debtors or the Distribution Agent have been notified in writing of a change of address); (b) at the address set forth in any written notice of change of address delivered to the Notice and Claims Agent; or (c) at the address reflected in the Schedules if no Proof of Claim has been filed and the Notice and Claims Agent has not received a written notice of a change of address.  The Debtors, the Reorganized Debtors, the Distribution Agent and the Notice and Claims Agent shall not incur any liability whatsoever on account of the delivery of any Distributions under the Plan.

9.2.3     Foreign Currency Exchange Rate.  Except as otherwise provided herein, an order of the Bankruptcy Court or as agreed to by the Holder and the Debtors or the Reorganized Debtors, as applicable, any Claim asserted in a currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollars at the Exchange Rate.

9.3.   Distribution Agents

The Debtors and the Reorganized Debtors, as applicable, shall have the authority, in their sole discretion, to enter into agreements with one or more Distribution Agents to facilitate the Distributions required hereunder.  To the extent the Debtors and the Reorganized Debtors, as applicable, do determine to utilize a Distribution Agent to facilitate the Distributions, such Distribution Agent would first be required to: (a) affirm its obligation to facilitate the prompt distribution of any documents; (b) affirm its obligation to facilitate the prompt distribution of any recoveries or Distributions required under the Plan; and (c) waive any right or ability to set off, deduct from or assert any Lien or other encumbrance against the Distributions required under the Plan to be distributed by such Distribution Agent.

The Debtors or the Reorganized Debtors, as applicable, shall pay to the Distribution Agents all of their reasonable and documented fees and expenses without the need for any approvals, authorizations, actions or consents of the Bankruptcy Court or otherwise.  The Distribution Agents shall submit detailed invoices to the Debtors or the Reorganized Debtors, as applicable, for all fees and expenses for which the Distribution Agents seek reimbursement, and the Debtors or the Reorganized Debtors, as applicable, shall pay those amounts that they, in their sole discretion, deem reasonable, and shall object in writing to those fees and expenses, if any, that the Debtors or the Reorganized Debtors, as applicable, deem to be unreasonable.  In the event that the Debtors or the Reorganized Debtors, as applicable, object to all or any portion of the amounts requested to be reimbursed in a Distribution Agent's invoice, the Debtors or the Reorganized Debtors, as applicable, and such Distribution Agent shall endeavor, in good faith, to

- 33 -

reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses.  In the event that the Debtors or the Reorganized Debtors, as applicable, and a Distribution Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

9.4.    <u>Fractional and De Minimis Distributions</u>

Notwithstanding anything herein to the contrary, the Reorganized Debtors and the Distribution Agent shall not be required to make Distributions or payments of less than $50.00, which amount shall be set forth in the Plan Supplement (whether in Cash or otherwise) and shall not be required to make partial Distributions or Distributions of fractional shares of New Common Stock.  Whenever any payment or Distribution of a fractional share of New Common Stock under the Plan would otherwise be called for, the actual payment or Distribution will reflect a rounding of such fraction to the nearest number of shares of New Common Stock (up or down), with half shares of New Common Stock or less being rounded down.

9.5.    <u>Undeliverable Distributions</u>

In the event that any Distribution to any Holder is returned as undeliverable, or no address for such Holder is found in the Debtors' records, no further Distribution to such Holder shall be made unless and until the Reorganized Debtors or the Distribution Agent is notified in writing of the then-current address of such Holder, at which time such Distribution shall be made to such Holder not less than 30 days thereafter.  Undeliverable Distributions shall remain in the possession of the Reorganized Debtors and the Distribution Agent until such time as such Distribution becomes deliverable or such Distribution reverts to the Reorganized Debtors or is canceled pursuant to Section 9.10 herein, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

9.6.    <u>Reversion</u>

Any Distribution under the Plan, including Distributions made by the Agents and the Norwegian Bond Trustee in accordance with Section 9.1, that is an Unclaimed Distribution for a period of six months thereafter shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code, and such Unclaimed Distribution shall revest in the Reorganized Debtors and, to the extent such Unclaimed Distribution is New Common Stock, such Unclaimed Distribution shall be deemed canceled.  Upon such revesting or cancelation, the Claim of any Holder or its successors and assigns with respect to such property shall be canceled, discharged and forever barred, notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary.  The provisions of the Plan regarding undeliverable Distributions and Unclaimed Distributions shall apply with equal force to Distributions that are issued by the Debtors, the Reorganized Debtors, or the Distribution Agent made pursuant to any indenture or Certificate, notwithstanding any provision in such indenture or Certificate to the contrary and notwithstanding any otherwise applicable federal or state escheat, abandoned or unclaimed property law.

SC1:4030160.8

Nothing contained herein shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim whose Distribution is declared an undeliverable or Unclaimed Distribution.

9.7.    Surrender of Canceled Instruments or Securities

Except as otherwise provided in the Plan, on the Effective Date, or as soon as reasonably practicable thereafter, each holder of a Certificate shall be deemed to have surrendered such Certificate to the Distribution Agent or a Servicer (to the extent the relevant Claim is administered by a Servicer).  Subject to the foregoing sentence, regardless of any actual surrender of a Certificate, the deemed surrender shall have the same effect as if its Holder had actually surrendered such Certificate (including the discharge of such Holder's Claim or Equity Interest pursuant to the Plan), and such Holder shall be deemed to have relinquished all rights, Claims and Equity Interests with respect to such Certificate.  Notwithstanding the foregoing paragraph, this Section 9.7 shall not apply to any Claims Reinstated pursuant to the terms of the Plan.

9.8.    Compliance with Tax Requirements and Allocations to Principal and Interest

In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any tax law, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including withholding in kind (including withholding New Common Stock), liquidating a portion of the Distributions to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms they believe are reasonable and appropriate.  For purposes of the Plan, any withheld amount (or property) shall be treated as if paid to the applicable claimant.  The Reorganized Debtors reserve the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.  Distributions in full or partial satisfaction of Allowed Claims shall be allocated first to trust fund-type taxes, then to other taxes and then to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that has accrued on such Claims.

9.9.    Setoffs

Except as otherwise provided herein, a Final Order of the Bankruptcy Court, or as agreed to by the Holder and the Debtors or the Reorganized Debtors, as applicable, each Debtor or Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 thereof), applicable non-bankruptcy law, or such terms as may be agreed to by the Holder and the Debtors or the Reorganized Debtors, as applicable, may, without any further notice to, or action, order or approval of the Bankruptcy Court, set off against any Allowed Claim and the Distributions to be made on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any claims, rights and Causes of Action of any nature that such Debtor or

Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided* that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor or Reorganized Debtor of any such Claims, rights, and Causes of Action that such Debtor or Reorganized Debtor may possess against such Holder.  In no event shall any Holder of a Claim be entitled to set off any Claim against any Claim, right, or Cause of Action of a Debtor or a Reorganized Debtor, as applicable, unless such Holder has filed a Proof of Claim in these Chapter 11 Cases by the applicable Claims Bar Date preserving such setoff and a Final Order of the Bankruptcy Court has been entered, authorizing and approving such setoff.

      9.10.   <u>No Postpetition Interest on Claims</u>

      Unless otherwise specifically provided for in the Plan or the Confirmation Order, required by applicable law, or agreed to by the Debtors or the Reorganized Debtors, as applicable, no Holder of a Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date with respect to such Claim, notwithstanding any dispute or other delay with respect to any Distribution.

      9.11.   <u>No Payment Over the Full Amount</u>

      In no event shall a Holder of a Claim receive more than the full payment of such Claim.  To the extent any Holder has received payment in full with respect to a Claim, such Claim shall be disallowed and expunged without an objection to such Claim having been filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

SC1:4030160.8

10.   **PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS**

10.1.   Objections to Claims

Any objections to Claims (other than Administrative Claims) shall be filed on or before the Claims Objection Bar Date.

10.2.   Estimation of Claims

Before or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not yet been the subject of a Final Order, shall be deemed to be estimated at zero dollars unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including, but not limited to, for purposes of Distributions).

Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court or under the Plan. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation of such Claim unless the Holder of such Claim has filed a motion with the Bankruptcy Court requesting the right to seek such reconsideration on or before 20 calendar days after the date such Claim is estimated by the Bankruptcy Court.

10.3.   Expungement and Disallowance of Claims

10.3.1   Paid, Satisfied, Amended, Duplicate or Superseded Claims. Any Claim that has been paid, satisfied, amended, duplicated (by virtue of the substantive consolidation provided for under this Plan, or otherwise) or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtors on or after 14 calendar days after the date on which notice of such adjustment or expungement has been filed with the Bankruptcy Court, without an objection to such Claim having to be filed, and without any further action, order or approval of the Bankruptcy Court.

10.3.2   Claims by Persons From Which Property Is Recoverable. Unless otherwise agreed to by the Reorganized Debtors or ordered by the Bankruptcy Court, any Claims held by any Person or Entity from which property is recoverable under section 542, 543, 550 or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f),

- 37 -

522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and any Holder of such Claim may not receive any Distributions on account of such Claim until such time as any related Cause of Action asserted against that Person or Entity by the Debtors or the Reorganized Debtors has been resolved.

### 10.4.  Amendments to Proofs of Claim

On or after the Effective Date, a Proof of Claim may not be amended (other than solely to update or correct the name or address of the Holder of such Claim) without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and any such amended Proof of Claim filed without such prior authorization shall be deemed disallowed in full and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

### 10.5.  No Distributions Pending Allowance

If an objection to a Claim or a portion thereof is filed as set forth in this Article 10 or the Claim otherwise remains a Disputed Claim, except as otherwise provided in a Final Order of the Bankruptcy Court, no payment or Distribution provided under the Plan shall be made on account of such Claim or portion thereof, as applicable, unless and until such Disputed Claim becomes an Allowed Claim.

### 10.6.  Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the applicable provisions of the Plan.

### 10.7.  Administration Responsibilities

Except as otherwise specifically provided in the Plan, after the Effective Date the Reorganized Debtors shall have the sole authority to (a) file, withdraw or litigate to judgment objections to Claims, (b) settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court, and (c) administer and adjust, or cause to be administered and adjusted, the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

11.    **CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN**

11.1.    Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of this Article 11.

(a)    Confirmation Order.  The Confirmation Order shall have been entered in a form and substance reasonably satisfactory to the Debtors and each Approving Bondholder, and there shall not be a stay or injunction in effect with respect thereto.

(b)    New Primorsk Charter.  The Reorganized Primorsk Certificate of Incorporation shall have been duly filed with the Registrar of Companies and Official Receiver (D.R.C.O.R.) of the Republic of Cyprus.

(c)    Replacement Loans.  The Replacement Loan Documents shall have been duly executed and delivered by the Reorganized Debtors parties thereto, and all conditions precedent to the consummation of the Replacement Loans shall have been waived or satisfied in accordance with the terms thereof and the closing of the Replacement Loans shall have occurred.

(d)    Professional Fee Escrow Account.  The Debtors shall have established and funded the Professional Fee Escrow Account in accordance with Section 3.4.2 herein.

(e)    Necessary Documents.  All actions, documents, certificates and agreements necessary to implement the Plan shall have been effected or executed and delivered, as applicable.

(f)    Necessary Authorizations.  All authorizations, consents, regulatory approvals, rulings or documents that are necessary to implement and effectuate the Plan as of the Effective Date shall have been received, waived or otherwise resolved.

11.2.    Waiver of Conditions

The Debtors, in consultation with the Approving Bondholders, may waive conditions to the occurrence of the Effective Date set forth in this Article 11 at any time.

11.3.    Simultaneous Transactions

Except as otherwise expressly set forth in the Plan, the Confirmation Order or a written agreement by Primorsk, each action to be taken on the Effective Date shall be deemed to occur simultaneously as part of a single transaction.

SC1:4030160.8

11.4.    <u>Effect of Non-Occurrence of the Effective Date</u>

If the Effective Date does not occur by the 60th day following the Confirmation Date or such later date as the Debtors, in consultation with the Approving Bondholders, determine, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors, prejudice in any manner the rights of the Debtors or any other Person, or constitute an admission, acknowledgment, offer or undertaking by the Debtors or any Person.

## 12.    SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

### 12.1.    Compromise and Settlement

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim, or any Distribution to be made on account of such Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors and their Estates and is fair, equitable and reasonable.

### 12.2.    Subordinated Claims

The allowance, classification and treatment of all Allowed Claims and Equity Interests and the respective Distributions and treatments under the Plan take into account, conform to and satisfy the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto; however, the Debtors reserve the right to reclassify or modify the treatment of any Allowed Claim or Equity Interest in accordance with any contractual, legal or equitable subordination relating thereto, unless otherwise provided in a settlement agreement concerning such Allowed Claim or Equity Interest.

### 12.3.    Discharge of Claims and Termination of Equity Interests

Pursuant to and to the fullest extent permitted by the Bankruptcy Code, except as otherwise specifically provided in the Plan or the Confirmation Order, the treatment of Claims and Equity Interests under the Plan shall be in full and final satisfaction, settlement, release, discharge, and termination, as of the Effective Date, of all Claims of any nature whatsoever, whether known or unknown, against, and Equity Interests in, the Debtors, any property of the Estates, the Reorganized Debtors or any property of the Reorganized Debtors, including all Claims of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim or Equity Interest based upon such Claim, debt, right, or Equity Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Equity Interest based upon such Claim, liability, obligation or Equity Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim, liability, obligation or Equity Interest has accepted the Plan. Except as otherwise provided herein, any default by the Debtors or their Affiliates with respect to any Claim that existed immediately prior to or on account of the filing of these Chapter 11 Cases shall be deemed cured on the Effective Date.

### 12.4.    Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the

SC1:4030160.8

Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Reorganized Debtors and their successors and assigns.

12.5.   **Debtor Release**

**Except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, the Released Parties are hereby released and discharged by the Debtors, the Reorganized Debtors and the Estates, including any successor to the Debtors or any Estate representative, from all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for indemnification, tort, contract, violations of federal or state securities laws or otherwise, including, those that any of the Debtors, the Reorganized Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or any other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their non-Debtor Subsidiaries, the Estates, the conduct of the businesses of the Debtors and their non-Debtor Subsidiaries, these Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the restructuring of Claims and Equity Interests prior to or during these Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement, the Replacement Loans or, in each case, related agreements, instruments or other documents, any action or omission with respect to Intercompany Claims, any action or omission as an officer, director, agent, representative, fiduciary, controlling person, affiliate or responsible party, or any transaction entered into or affecting, a Non-Debtor Subsidiary, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, fraud, or a criminal act.**

12.6.   **Voluntary Release by Holders of Claims and Equity Interests**

**Except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, to the fullest extent permitted by applicable law, the Releasing Parties (regardless of whether a Releasing Party is a Released Party) shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release, waive and discharge the Released Parties of any and all claims, obligations, rights, suits, damages,**

- 42 -

Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for indemnification, tort, contract, violations of federal or state securities laws or otherwise, including, those that any of the Debtors, the Reorganized Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or any other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their non-Debtor Subsidiaries, the Estates, the conduct of the businesses of the Debtors and their non-Debtor Subsidiaries, these Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the restructuring of Claims and Equity Interests prior to or during these Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement, the Replacement Loans or, in each case, related agreements, instruments or other documents, any action or omission with respect to Intercompany Claims, any action or omission as an officer, director, agent, representative, fiduciary, controlling person, affiliate or responsible party, or any transaction entered into or affecting, a Non-Debtor Subsidiary, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, fraud, or a criminal act.

### 12.7. **Scope of Releases**

Each Person providing releases under the Plan, including the Debtors, the Reorganized Debtors, the Estates and the Releasing Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person expressly waives any and all rights that it may have under any statute or common law principle which would limit the effect of such releases to those claims or causes of action actually known or suspected to exist at the time of execution of such release.

### 12.8. **Exculpation**

Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors and their directors, officers (including the chief restructuring officer and interim management), employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with the solicitation.

SC1:4030160.8

Except with respect to any acts or omissions expressly set forth in and preserved by the Plan, the Plan Supplement or related documents, the Exculpated Parties shall neither have nor incur any liability to any Entity for any Prepetition or postpetition act taken or omitted to be taken in connection with, or arising from or relating in any way to, these Chapter 11 Cases, including (a) the operation of the Debtors' businesses during the pendency of these Chapter 11 Cases; (b) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the issuance of any shares of New Common Stock in connection with the Plan, the Disclosure Statement and the Plan, the Plan Supplement, the Replacement Loans and any related contract, instrument, release or other agreement or document created or entered into in connection therewith (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan); (c) the offer and issuance of any securities under or in connection with the Plan; or (d) any other Prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, other than liability resulting from any act or omission that is determined by Final Order to have constituted willful misconduct, gross negligence, fraud, or a criminal act.

12.9.    **Injunction**

Except as otherwise expressly provided in the Plan or Confirmation Order, the satisfaction, release and discharge pursuant to this Article 12 shall also act as a permanent injunction against any Person who has held, holds or may hold Claims or Equity Interests against commencing or continuing any action, employment of process or act to collect, enforce, offset, recoup or recover any Claim or Cause of Action satisfied, released, or discharged under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, including to the extent provided for or authorized by sections 524 and 1141 thereof.

12.10.    **Limitations on Exculpations and Releases**

Notwithstanding anything to the contrary herein, none of the releases or exculpations set forth herein shall operate to waive or release any obligation or Causes of Action of any Person or Entity:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post Effective Date obligations, or (b) expressly set forth in and preserved by the Plan, the Plan Supplement or related documents.

- 44 -

13.  **MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN**

13.1.  Modification of Plan

Subject to the limitations contained in the Plan: (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications with respect to the treatment of Classes 3 – 6 to satisfy section 1129(b) of the Bankruptcy Code and amendments or modifications to the terms of the New Class A Common Stock, the New Class B Common Stock or other equity or corporate governance arrangements; and (b) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors may, upon order of the Bankruptcy Court, (i) amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or (ii) remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

13.2.  Effect of Confirmation on Modification

Entry of a Confirmation Order shall mean that all modifications and amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code, and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

13.3.  Revocation of Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if the Confirmation Order is not entered or the Effective Date does not occur, then:  (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (c) nothing contained in the Plan shall:  (i) constitute a waiver or release of any claims by or Claims against, or any Equity Interests in, any Debtor or any other Entity; (ii) prejudice in any manner the rights of the Debtors or any other Entity; or (iii) constitute an admission of any sort by the Debtors or any other Entity.

SC1:4030160.8

14.    **RETENTION OF JURISDICTION**

14.1.    Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain its existing exclusive jurisdiction over all matters arising in or out of, or related to, these Chapter 11 Cases or the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(a)    Allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status, or amount of any Claim or Equity Interest, including the resolution of any request for payment of any General Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

(b)    Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c)    Resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is a party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including any disputes regarding cure obligations in accordance with Section 8.3 herein; and (ii) any dispute regarding whether a contract or lease is, or was, executory or expired;

(d)    Ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the Plan and adjudicate any and all disputes from, or relating to Distributions under the Plan;

(e)    Adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and Causes of Action, and grant or deny any applications, involving a Debtor that may be pending before the Bankruptcy Court on the Effective Date;

(f)    Adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(g)    Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, Plan Supplement or the Disclosure Statement;

- 46 -

(h)     Enter and enforce any order for the sale of property pursuant to section 363, 1123, or 1146(a) of the Bankruptcy Code;

(i)     Adjudicate, decide or resolve any and all disputes as to the ownership of any Claim or Equity Interest;

(j)     Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with enforcement of the Plan;

(k)     Resolve any cases, controversies, suits, disputes or Causes of Action with respect to the existence, nature and scope of the releases, injunctions, and other provisions contained in the Plan, and enter such orders as may be necessary or appropriate to implement and enforce such releases, injunctions, and other provisions;

(l)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(m)     Determine any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan, the Plan Supplement or the Disclosure Statement;

(n)     Enter an order or final decree concluding or closing these Chapter 11 Cases;

(o)     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(p)     Hear and determine disputes, cases, controversies or Causes of Action arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan (other than any dispute arising after the Effective Date under, or directly with respect to, the Replacement Loans and any related intercreditor agreement, which disputes shall be adjudicated in accordance with the terms of such agreements);

(q)     Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retirement benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

- 47 -

(r)    Enforce all orders previously entered by the Bankruptcy Court; and

(s)    Hear any other matter not inconsistent with the Bankruptcy Code.

SC1:4030160.8

15.    **MISCELLANEOUS PROVISIONS**

15.1.    Immediate Binding Effect

Notwithstanding Bankruptcy Rule 3020(e), 6004(g) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors and any and all Holders of Claims and Equity Interests (irrespective of whether Holders of such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

15.2.    Additional Documents

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims or Equity Interests receiving Distributions pursuant to the Plan and all other parties-in-interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

15.3.    Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (a) any Debtor with respect to the Holders of Claims or Equity Interests or other Entity; or (b) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

15.4.    Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

15.5.    Term of Injunction or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in these Chapter 11 Cases pursuant to section 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

SC1:4030160.8

15.6.    Entire Agreement

On the Effective Date, the Plan and the Plan Supplement shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations with respect to this subject matter, all of which have become merged and integrated into the Plan.

15.7.    Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Copies of such exhibits and documents may be obtained upon written request to the Debtors' counsel at the address below or by downloading such exhibits and documents from the Bankruptcy Court's website at www.nysb.uscourts.gov or the website of the Debtors' notice and claims agent at www.kccllc.net/primorsk.

15.8.    Nonseverability of Plan Provisions Upon Confirmation

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (c) nonseverable and mutually dependent.

15.9.    Closing of Chapter 11 Cases

The Reorganized Debtors shall, promptly after the full administration of these Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close these Chapter 11 Cases.

15.10.    Conflicts

Except as set forth in the Plan, to the extent that any provisions of the Disclosure Statement, the Plan Supplement, or any order of the Bankruptcy Court (other than the Confirmation Order) referenced in the Plan (or any exhibits, appendices, supplements, or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

15.11.  <u>Further Assurances</u>

The Debtors, Reorganized Debtors, all Holders of Claims receiving Distributions hereunder, and all other parties-in-interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

15.12.  <u>No Stay of Confirmation Order</u>

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

15.13.  <u>Waiver or Estoppel</u>

Each Holder of a Claim or an Equity Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Equity Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement or papers filed with the Bankruptcy Court prior to the Confirmation Date.

15.14.  <u>Post-Effective Date Service</u>

After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities that have filed renewed requests for service.

15.15.  <u>Notices</u>

All notices, requests, pleadings and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(a)    If to the Debtors, to:

Primorsk International Shipping Limited
c/o Prisco (Singapore) Pte Ltd
No. 8 Temasek Boulevard
#24-02 Suntec Tower Three
Singapore 038988
Attn:  Dmitry Golomovzy

with copies to:

Sullivan & Cromwell LLP
125 Broad St.
New York, NY 10004
Attn:   Andrew G. Dietderich
        Brian. D. Glueckstein

(b)     If to the Secured Agent, to:

White & Case LLP
1155 Avenue of the Americas
New York, NY 10036
Attn:   Scott Greissman

(c)     If to the Swap Agent, to:

Luskin, Stern & Eisler LLP
Eleven Times Square
New York, NY 10036
Attn:   Richard Stern

(d)     If to the Norwegian Bond Trustee, to:

Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Attn:   Douglas P. Bartner
        Ned S. Schodek

(e)     If to the U.S. Trustee, to:

Office of the United States Trustee
U.S. Department of Justice
33 Whitehall Street, 21st Floor
New York, NY 10004
Attn:   Richard Morrissey

- 52 -

New York, New York
Dated: March 15, 2016

PRIMORSK INTERNATIONAL SHIPPING
LIMITED, on behalf of itself and all other Debtors

By:     _/s/ Holly Felder Etlin_____
        Name: Holly Felder Etlin
        Title:  Chief Restructuring Officer of the
                Debtors

<u>**Exhibit 1**</u>

**Material Terms for New Common Stock**

Capitalized terms not defined herein have the meanings specified in the Plan.

<u>Issuer</u>          Reorganized Primorsk (the "*Company*")

<u>Jurisdiction</u>       The Company shall be organized in Cyprus. The Company's articles of incorporation and other governing corporate documents (collectively, the "*Articles*") shall conform to this <u>Exhibit 1</u> and otherwise include such provisions as are set forth in the Plan Supplement.

<u>Share Capital</u>     The share capital of the Company will consist of two classes of ordinary shares (the "*Shares*") – 75% of the Shares will be New Class B Common Stock issued to Holders of Class 4 Norwegian Bond Claims and 25% of the Shares will be New Class A Common Stock issued to Holders of Class 6 Equity Interests. The Shares will rank pari passu with each other as to dividends, distributions and the proceeds of winding-up or liquidation.

<u>Voting</u>         Each Share will have one vote with respect to all matters other than the election of Directors.

Except as otherwise required by Cyprus law, the holders of Shares ("*Shareholders*") may act by resolution of a simple majority (more than 50%) of the issued and outstanding Shares (a "*Simple Majority*"), *provided* that no action by Shareholders with respect to the matters described in "Supermajority Matters" below ("*Supermajority Matters*") shall be taken unless approved by the affirmative vote of holders of at least two-thirds of the aggregate number of issued and outstanding Shares.

The same voting thresholds will apply in the case of actions by written consent of Shareholders. The Articles shall include procedures for meetings and written consents of Shareholders.

<u>Directors</u>       The board of directors (the "*Board*") of the Company will consist of the same directors.

The Board will have five directors consisting of:

    (i)   two directors appointed by the action of Shareholders holding a Simple Majority of the New Class A Common Stock, voting as a separate class;

    (ii)  two directors appointed by action of Shareholders holding a Simple Majority of the New Class B Common Stock, voting as a separate class (each a "*Class B Director*"); and

    (iii) the Chief Executive Officer of the Company, who shall be the Chairman of the Board.

The initial Board members at completion of the Restructuring shall be identified in the Plan Supplement.

The Board shall be vested with control over the Company other than with respect to such matters as are reserved for the Shareholders by applicable law or the Articles.

Actions by the Board may be taken by a majority of three directors, *provided* that (i) no action by the Board with respect to Supermajority Matters may be taken without (A) the unanimous approval of the directors or (B) the approval of at least three directors *and* the approval of Shareholders holding at least two-thirds of the aggregate number of issued and outstanding Shares; and (ii) no amendment or modification to the New Management Agreements may be approved by the Company without the consent of at least one Class B Director.

| | |
|---|---|
| Supermajority Matters | The following actions after the Effective Date shall constitute Supermajority Matters: |

1. The issuance of new share capital of the Company or securities convertible into share capital of the Company.

2. Any modification of the rights of Shareholders in their capacity as such, except as may be expressly permitted by the Articles or applicable law.

3. Any increase or decrease in the size of the Board.

4. The sale of all or substantially all of the assets of the Company or the merger of the Company with or into any other entity.

5. The appointment or removal of the Chief Executive Officer.

6. The entering into of any material transaction with the Chief Executive Officer or any Affiliates of the Chief Executive Officer other than on arm's-length terms.

7. The direct or indirect sale of a vessel with dead weight tonnage exceeding 10,000 tonnes (a "*Vessel*") if the total number of Vessels operated by the Company would be fewer than nine after giving effect to such sale.

8. The making of a loan or extension of credit to any person for a period longer than 90 days outside of the ordinary course of the business of the Company.

9. The incurrence of new funded debt other than debt to finance the acquisition of a Vessel and the refinancing of funded debt (including accrued interest, costs and fees) from time to time.

10.    The taking of certain insolvency-related actions described in the Plan Supplement and concerning the Company or any entity directly or indirectly owning a Vessel (a "*Material Subsidiary*").

11.    Other matters as may be reasonably determined by the Company and included in the Plan Supplement as Supermajority Matters.

| | |
|---|---|
| <u>Fees and Expenses</u> | Non-executive directors will receive remuneration determined by a Simple Majority of the Board, plus reimbursement of out-of-pocket expenses. |
| <u>Transfers</u> | The Shares shall be freely transferable to existing Shareholders of the Company.  Other transfers of Shares shall require the consent of the Board, not to be unreasonably withheld, conditioned or delayed. |
| <u>Drag-Along</u> | On a proposed transfer resulting in any person holding two-thirds or more of the Shares, all remaining Shareholders shall, if the proposed buyer so directs at its discretion, be required to sell all of their Shares on at least as favorable terms and conditions and at a cash price equal to the price paid per Share by the proposed buyer. |
| <u>Tag-Along</u> | On a proposed transfer resulting in any person holding more than one-third of the Shares, each Shareholder shall have the right (but not the obligation) to require the proposed buyer to purchase for cash all of his Shares, at a price equal to and on other terms and conditions no worse than the price paid per Share by the proposed buyer. |
| <u>Information Requests</u> | Each Shareholder shall take any action the Company may reasonably request in connection with the informational requests of lenders to or investors in the Company, including providing all "Know Your Customer" and other customary information and materials.  It is understood that any information provided by a Shareholder may be provided subject to such confidentiality arrangements as such Shareholder may reasonably require. |

**Exhibit 2**

**Material Terms for the Replacement Loans**

The Replacement Loans will be issued in three tranches – Tranche A Replacement Loans, Tranche B Replacement Loans and Tranche C Replacement Loans.  The following provisions apply to all the Replacement Loans, except where otherwise indicated.  Capitalized terms not defined herein have the meanings specified in the Plan.

| | |
|---|---|
| Borrower | Reorganized Primorsk (the "*Company*"). |
| Guarantors | Each of the nine existing vessel-owning subsidiaries and any subsidiary in the future (each, a "*Vessel Subsidiary*") that owns a vessel with dead weight tonnage over 10,000 tonnes (each, a "*Vessel*"). |
| Administrative Agent | The Secured Agent or such other financial institution as the Debtor may determine. |
| Collateral Agent | The Secured Agent or such other financial institution as the Debtor may determine. |
| Ranking | Replacement Loans will be general unsubordinated obligations of Reorganized Primorsk and each Vessel Subsidiary, except as provided under "Lien Subordination" below. |
| Liens | Replacement Loans will be secured by a perfected security interest in: (i) all shares in each Vessel Subsidiary, (ii) each Vessel held by a Vessel Subsidiary, (iii) any charter party contract relating to such Vessel, (iv) bank accounts, and (v) the proceeds of any of the foregoing ("*Collateral*"). |
| Lien Subordination | The security documentation shall provide that the proceeds of any realization of Collateral after default and the proceeds of any disposition of Collateral outside of the ordinary course of business shall be applied by the Collateral Agent pursuant to a customary waterfall in which proceeds are applied, *first*, to pay amounts due under the Tranche A Replacement Loans, *second*, to pay amounts due under the Tranche B Replacement Loans and, *third*, to pay amounts due under the Tranche C Replacement Loans. |
| Principal Amount | The initial principal amount of the Tranche A Replacement Loans shall be the amount of the Allowed Senior Secured Claims.<br><br>The initial principal amount of the Tranche B Replacement Loans shall be the amount of the Allowed Junior Secured Claims. |

SC1:4044143.6

The initial principal amount of the Tranche C Replacement Loans shall be the amount of the Allowed Swap Secured Claims.

Maturity                       December 31, 2021.

Amortization                   If Tranche A Replacement Loans are Amortizing, Reorganized Primorsk shall be required to make the following mandatory prepayments:

(a) within 30 days of the Effective Date, an initial payment equal to 2% of the aggregate initial principal amount of Tranche A, B and C Replacement Loans; and

(b) within 30 days of the end of each quarter ended after the Effective Date, a quarterly amortization payment equal to US $5 million.

For example, if the Effective Date is July 15, 2016, Reorganized Primorsk shall be required to make an initial payment of approximately $5.2 million on or prior to August 15, 2016 and an amortization payment of $5 million with respect to the third quarter of 2016 on or prior to October 30, 2016.

Interest Payments              Interest paid in cash quarterly in arrears.  Interest shall be at a rate per annum equal to LIBOR plus the Applicable Margin.

Applicable Margin              The Applicable Margin shall depend on whether Tranche A Replacement Loans are Amortizing, as follows:

|  | Tranche A Amortizing | Tranche A Not Amortizing |
| --- | --- | --- |
| **Tranche A** | 1.50% | 1.75% |
| **Tranche B** | 1.75% | 2.00% |
| **Tranche C** | 2.00% | 2.25% |

Voluntary Prepayment           At any time after the Effective Date upon at least 15 days' written notice, the Company, in its sole discretion, may refinance, repay or otherwise acquire or retire all or part of all amounts outstanding under any Tranche of Replacement Loans, at a prepayment price equal to 100% of the principal amount thereof plus accrued and unpaid interest, if any, to, but not including, the prepayment date without premium or penalty.  Voluntary prepayments will decrease required amortizations in chronological order of scheduled payments.

Undertakings/Covenants | The Replacement Loans shall benefit from covenants with respect to the following matters, as reasonably determined by the Debtors and set forth in the Plan Supplement.

- No change of business.
- No dividend or any other distribution, redemption, purchase or return of share capital without the consent of holders of a majority in principal amount of each Tranche.
- No direct or indirect disposal of Vessels outside of the ordinary course of business unless the proceeds of such disposition are (a) reinvested in the business within 270 days or (b) applied to make voluntary prepayments of Replacement Loans.
- Vessel covenants:
  - Approved flag;
  - No change to vessel's name or port of registry;
  - Good condition and repair;
  - Classification society undertakings;
  - Inspections;
  - Prevention of and release of each vessel from arrest;
  - Compliance with laws;
  - Maintenance of insurance;
  - Provision of reasonably requested information and notification of certain events;
  - Restrictions on chartering, appointment of managers; and
  - Registration and notice of mortgage.
- Each Vessel, its earnings and insurances to be free from all security interests and encumbrances, other than purchase money liens and other exclusions to be specified in the Plan Supplement.
- Information covenants:
  - Financial statements, in specified form;
  - Access to books and records upon reasonable request;
  - Notification of litigation; and
  - Notification of default.
- Each long-term charter entered into to be accompanied by a charter assignment.
- Each new Vessel to be owned by a new special purpose vehicle which will guarantee the Replacements Loans and will be subject to security arrangements (with liens and guarantees in favor of the Replacement Loans subordinated to acquisition financing).
- Maintenance of corporate existence and good standing.
- No provision of credit or financial assistance to any person.

SC1:4044143.6

- No acquisition of securities other than marketable securities.
- Compliance with Anti-Corruption Laws and Sanctions regimes and applicable laws.
- Others as the Company may reasonably agree.

"Know Your Customer" Undertaking

As a condition to the Effective Date and on an on-going as-requested basis, the Company will use its reasonable best efforts to provide the lenders of the Replacement Loans all information and materials necessary for "Know Your Customer" and other customary money laundering checks, subject to appropriate confidentiality arrangements to be agreed.

Events of Default

The Replacement Loans shall benefit from covenants with respect to the following matters, as reasonably determined by the Debtors and set forth in the Plan Supplement.

- Failure to pay amounts when due.
- Breach of certain fundamental obligations (e.g., limitation on dividends) or breach of other obligations that cause a material adverse effect on the ability of the Company to repay the Replacement Loans.
- Acceleration of other indebtedness in excess of $20 million in aggregate.
- Insolvency, enforcement of judgments or related events.
- Others as the Company may reasonably agree.

Governing Law

The Replacement Loans will be governed by the laws of the State of New York. The security documents will be governed by such laws as the Company determines appropriate in light of their purpose and function.

## Exhibit 3

### Material Terms for New Management Agreements

Capitalized terms not defined herein have the meanings specified in the Plan.

| | |
|---|---|
| Parties | Each of the nine Debtor Subsidiaries shall be party to a separate New Management Agreement with Prisco (Singapore) Pte Ltd ("*Prisco*"). |
| Services | Each New Management Agreement shall include the following services as reasonably negotiated between Reorganized Primorsk and Prisco (in consultation with counsel to the Peraticos Holders so long as they continue to hold a substantial portion of the Norwegian Bonds) and set forth in the Plan Supplement. |

- Crew Management
- Technical Management
- Commercial Management
- Insurance Arrangements
- Accounting Services
- Sale or Purchase of the Vessel
- Provisions
- Bunkering
- Chartering Services
- Owners' Insurance

| | |
|---|---|
| Management Fee | Annual management fees will vary by Vessel Subsidiary, however average fees per vessel per day for all the New Management Agreements to be equal to $2,000 per vessel per day from the Effective Date until June 30, 2017, after which average fees per vessel per day will be equal to $1,800 per vessel. |
| Additional Fees | 1.25% chartering commission for charters arranged by Prisco and in place on the Effective Date and any new charters thereafter.<br><br>1.0% of gross sale or purchase price for vessel disposition and acquisition. |
| Term | Five years from the Effective Date, subject to renewals with mutual consent. |
| Early Termination Right | Reorganized Primorsk shall have the right to terminate all (but not some) of the New Management Agreements without the consent of Prisco at any time prior to the Effective Date or the 90th day thereafter if the directors of the Company appointed by the holders of New Class B Common Stock (the "*Class B Directors*") determine that the New Management Agreements are not as favorable to the Company as another available alternative.  Such termination will be effective 90 days after notice from the Class B Directors. |

| | |
|---|---|
| <u>Amendments and Modification</u> | Each New Management Agreement shall provide that no amendment or modification thereto shall be effective without the signature of at least one Class B Director. |