WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Glenn M. Kurtz
Scott Greissman
Douglas P. Baumstein
Charles R. Koster

*Attorneys for Nordea Bank Norge ASA,
as Facility Agent*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re | Chapter 11 |
| PRIMORSK INTERNATIONAL SHIPPING LIMITED, *et al.*,[1] | Case No. 16-10073 (MG) |
| Debtors. | Jointly Administered |

**LIMITED OBJECTION OF NORDEA BANK NORGE ASA TO FIRST INTERIM APPLICATION OF SULLIVAN & CROMWELL LLP AS COUNSEL TO THE DEBTORS AND DEBTORS-IN-POSSESSION FOR APPROVAL AND ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD FROM JANUARY 15, 2016 THROUGH AND INCLUDING APRIL 30, 2016**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Nordea Bank Norge ASA, in its capacity as agent and security trustee (the "Facility Agent") under that certain secured loan facility agreement dated January 2, 2008 (as amended

---

[1] The Debtors in these Chapter 11 Cases and, if applicable, the last four digits of their U.S. taxpayer identification numbers are: Primorsk International Shipping Limited (Cyprus), Boussol Shipping Limited (Cyprus) (6402) – m/t "Zaliv Amerika", Malthus Navigation Limited (Cyprus) (6401) – m/t "Zaliv Amurskiy", Jixandra Shipping Limited (Cyprus) (6168) – m/t "Prisco Alexandra", Levaser Navigation Limited (Cyprus) (0605) – m/t "Prisco Ekaterina", Hermine Shipping Limited (Cyprus) (0596) – m/t "Prisco Irina", Laperouse Shipping Limited (Cyprus) (0603) – m/t "Prisco Elizaveta", Prylotina Shipping Limited (Cyprus) (6085) – m/t "Prisco Elena", Baikal Shipping Ltd (Liberia) (6592) – m/t "Zaliv Baikal" and Vostok Navigation Ltd (Liberia) (1745) – m/t "Zaliv Vostok".

Americas 91268719

from time to time) relating to a $530 million secured loan facility, for itself and the other lender parties thereto (the "Senior Lenders"),[2] files this limited objection (the "Limited Objection") to the First Interim Application of Sullivan & Cromwell LLP as Counsel to the Debtors and Debtors-In-Possession for Approval and Allowance of Compensation for Services rendered and Reimbursement of Expenses Incurred for the Period From January 15, 2016 Through and Including April 30, 2016 [Docket No. 175] (the "First Interim Application"). In support of the Limited Objection, the Facility Agent respectfully states as follows:

## LIMITED OBJECTION

1. The Debtors filed these chapter 11 cases on January 15, 2016, following the maturity of the Senior Lenders' debt and after expiration of a six month forbearance period, during which the Senior Lenders had agreed to stand-still and the Debtors agreed to sell their vessel fleet to repay their secured obligations. They failed to do so. Instead, the Debtors filed and told the parties-in-interest that they had negotiated a cramdown reorganization plan structure with the majority holder of their subordinated bond debt, Wealth Holdings, Inc., that contemplated the conversion of the bonds into 75% of the equity of reorganized Primorsk, with the remaining reorganized share capital allocated to the existing shareholders and executive directors of Primorsk, who also held approximately one-third of the bond debt and, thus, would retain approximately 49 percent of the equity in reorganized Primorsk under the plan. (See First Day Declaration (ECF No. 2) at ¶ 40)

2. The Debtors then filed a cramdown plan of reorganization premised on such structure on March 15, 2016. (See Plan of Reorganization (ECF No. 103)) Under the plan, the

---

[2] The Senior Lenders are the principal stakeholders in these chapter 11 cases, holding claims totaling approximately $263 million. This figure includes approximately $16 million of principal debt owed to BNP Paribas, as swap agent and lender, which is outstanding under the junior swap facility. BNP Paribas is separately represented in these proceedings by Luskin Stern & Eisler LLP.

2

Senior Lenders would receive replacement secured instruments with a minimum term of five years, a reduced rate of interest, no additional collateral and no paydown. (See Plan of Reorganization §§ 4.2.3-4.2.5; Ex. 2) The Debtors acknowledged in their disclosure statement (filed with the plan) that prepetition equity held 32 percent of the outstanding bond debt, but also stated that "[t]he Company is not aware of any other Holder of Norwegian Bond Claims that is affiliated with the Company." (Disclosure Statement (ECF No. 104) at 2.B.2.b) (emphasis added)[3]

3. Yet the Debtors would not provide information about the plan proponents and the Debtors' relationship with them. Nor would Wealth Holdings, Inc., the purported record holder of approximately 60 percent of the bonds. At a hearing held on March 22, 2016, in response to the Senior Lenders' request, the Court directed that (i) the Debtors disclose to the Senior Lenders' advisors the identity of the ultimate beneficial owner of Wealth Holdings, Inc., (ii) Sullivan & Cromwell inform the Court in writing whether it was authorized to accept subpoenas for discovery on behalf of non-Debtor affiliates, including Apington Investments Limited, the Debtors' immediate parent, and (iii) Shearman & Sterling, counsel to Wealth Holdings, Inc., inform the Court in writing whether it was authorized to accept subpoenas for discovery on behalf of its client, each by the following morning. (See Mar. 22, 2016 Hr'g Tr. at 25:5-27:2; 28:11-14; 31:5-7)

4. Such acknowledgements and information were provided by the relevant parties by the morning of March 23. Shortly thereafter, Sullivan & Cromwell informed the undersigned that they had become aware of a prepetition relationship between Wealth Holdings, Inc. and Apington that rendered their cramdown plan unconfirmable. Sullivan & Cromwell also

---

[3] Notably, the relevant inquiry in determining whether the bondholder constituted an impaired accepting class for purposes of confirming a cramdown plan is whether Wealth Holdings Inc. was an "insider," not whether it was an "affiliate." See 11 U.S.C. § 1129(a)(10).

3

informed the Court on a telephone conference that afternoon. The Debtors then withdrew their plan and disclosure statement at the Court's direction following a telephonic hearing on March 25.

5. To be clear, the Senior Lenders by this pleading are not making any accusations or casting any aspersions. In fact, the Senior Lenders have been restrained in their reaction to the events and have since March 25 worked closely and cooperatively with the Debtors' advisors and their chief restructuring officer to stabilize the operations and commence an orderly sale process for the Debtors' fleet. The Senior Lenders also have consented to continued payment (on an interim basis) of Sullivan & Cromwell's fees and expenses post-March 25. But, the facts of these cases, including those described above and others, are undeniably troubling. As of this filing, the sale process is proceeding according to the milestones set forth in the amended cash collateral order (see Amended Cash Collateral Order (ECF No. 135) at ¶ 6), but it is unclear what the outcome of the sale will be and whether the Senior Lenders will be repaid in full.

6. In light of this continued uncertainty, the Senior Lenders believe consideration of payment of the unpaid fees and expenses of Sullivan & Cromwell incurred prior to the withdrawal of their plan on March 25 (totaling approximately $2 million) should be deferred.[4] The auction is presently expected to be completed in the next few weeks, and a sale hearing will hopefully take place in early to mid-July. At that time, parties-in-interest and the Court should have more information with which to assess the outcome of these cases and whether the deferred fees and expenses provided any value, or whether further investigation or analysis is required.

---

[4] If the Debtors insist on proceeding with the First Interim Application, the Court should deny the payment of unpaid fees and expense incurred prior to March 25, without prejudice to any final application for such fees and expenses.

4

7.      The Senior Lenders do not object at this time to payment of Sullivan & Cromwell's post-March 25 fees and expenses, on an interim basis, pursuant to section 331 of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, the Facility Agent respectfully requests that the Court defer consideration of, or deny, the First Interim Application to the extent it seeks payment of unpaid fees and expense incurred prior to March 25, and grant such further relief as the Court deems just and proper.

Dated: June 13, 2016
      New York, New York

Respectfully submitted,

By:    */s/ Scott Greissman*
WHITE & CASE LLP
Glenn M. Kurtz
Scott Greissman
Douglas P. Baumstein
Charles R. Koster
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gkurtz@whitecase.com
sgreissman@whitecase.com
dbaumstein@whitecase.com
ckoster@whitecase.com

Attorneys for Nordea Bank Norge ASA, as Facility Agent

Americas 91268719