**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————x
:
In re                                                                          :        Chapter 11
:
:        Case No. 16-10073 (MG)
PRIMORSK INTERNATIONAL SHIPPING          :
LIMITED, *et al.*, [1]                                            :         Jointly Administered
:
Debtors.        :
:
———————————————————————x

**REPLY TO LIMITED OBJECTION OF NORDEA BANK NORGE ASA TO FIRST
INTERIM APPLICATION OF SULLIVAN & CROMWELL LLP AS COUNSEL TO
THE DEBTORS AND DEBTORS-IN-POSSESSION FOR APPROVAL AND
ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD FROM
JANUARY 15, 2016 THROUGH AND INCLUDING APRIL 30, 2016**

Sullivan & Cromwell LLP ("S&C"), counsel for Primorsk International Shipping

Limited ("Primorsk") and certain of its affiliated debtors and debtors-in-possession (together

with Primorsk, the "Debtors"), hereby submits this reply to the *Limited Objection of Nordea*

*Bank Norge ASA to First Interim Application of Sullivan & Cromwell LLP as Counsel to the*

*Debtors and Debtors-in-Possession for Approval and Allowance of Compensation for Services*

*Rendered and Reimbursement of Expenses Incurred for the Period from January 15, 2016*

*Through and Including April 30, 2016* [Docket No. 180] (the "Objection"), and respectfully

states as follows:

1.        On June 13, 2016, Nordea Bank Norge ASA, as agent and security trustee

for the lenders under the Debtors' prepetition senior secured loan facility (the "Senior Lenders"),

---

[1]    The Debtors in these chapter 11 cases and, if applicable, the last four digits of their U.S. taxpayer identification
numbers are: Primorsk International Shipping Limited (Cyprus), Boussol Shipping Limited (Cyprus) (6402) –
m/t "Zaliv Amerika", Malthus Navigation Limited (Cyprus) (6401) – m/t "Zaliv Amurskiy", Jixandra Shipping
Limited (Cyprus) (6168) – m/t "Prisco Alexandra", Levaser Navigation Limited (Cyprus) (0605) – m/t "Prisco
Ekaterina", Hermine Shipping Limited (Cyprus) (0596) – m/t "Prisco Irina", Laperouse Shipping Limited
(Cyprus) (0603) – m/t "Prisco Elizaveta", Prylotina Shipping Limited (Cyprus) (6085) – m/t "Prisco Elena",
Baikal Shipping Ltd (Liberia) (6592) – m/t "Zaliv Baikal" and Vostok Navigation Ltd (Liberia) (1745) – m/t
"Zaliv Vostok".

filed the Objection in response to the *First Interim Application of Sullivan & Cromwell LLP as Counsel to the Debtors and Debtors-in-Possession for Approval and Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred for the Period from January 15, 2016 Through and Including April 30, 2016* [Docket No. 175] (the "Application").  According to the Objection, the Court should delay hearing the Application until the Senior Lenders learn the outcome of the pending sale process for the Debtors' vessels, and whether the Senior Lenders will be repaid in full.  (Objection ¶¶ 5-6.)

2.    The Objection relates to fee applications initially filed on February 22, 2016, March 21, 2016 and April 20, 2016.  The Senior Lenders requested and were given extra time to review the March and April fee applications.  S&C has complied with all informational requests of the Senior Lenders during the period of review.  The Senior Lenders have raised no substantive concern with any expenditure.  They have made no allegation that fees were not earned, that S&C overcharged, that work was not authorized or that any other specific basis exists under law to deny payment of professional fees.  The return date for this Objection was initially set at June 2, 2016, was extended until June 9, 2016 and was extended again until yesterday.

3.    The legal standard for payment of S&C's professional fees and expenses is unrelated to the outcome of the Debtors' auction process for the vessels, or to the Senior Lenders' ultimate recovery on their claims.  In awarding a professional person reasonable compensation for actual, necessary services rendered and reimbursement for actual, necessary expenses under section 330(a) of the Bankruptcy Code, courts consider the nature, extent and value of such services, taking into account all relevant factors including, among other things, whether such services were necessary or beneficial at the time at which the service was rendered;

SC1:4152134.5

and whether such compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in non-bankruptcy cases. *See* 11 U.S.C. § 330(a)(3). The Objection fails to explain how the Senior Lenders' recovery or "the outcome of these cases" is relevant to the Court's consideration of the Application and whether S&C's services before March 25, 2016 "provided any value". (*See* Objection ¶ 6.)

4.     Value is evident from the record. Prior to the chapter 11 filing, Primorsk's situation was grave. The company had minimal cash. The Debtors were in unstayed default with their secured lenders, who were threatening enforcement action. There was no pending process for disposition of vessels. The previous out-of-court sale process had been a shambles. A new out-of-court sales process would have taken months without necessarily leading to a viable result. Although charter rates had risen, Primorsk could not provide assurances to charter counterparties that it would be able to perform, even in the short term as strategic options were considered. There was no independent management. The relations between the junior stakeholders and the secured creditors were acrimonious without any process for resolution. At the time, the owners feared a lender foreclosure process and a sale to lender affiliates at a steep discount to market, while the lenders feared the owners might attempt to hinder any foreclosure by taking inappropriate actions with respect to the ships. And no legal process in any country— other than the U.S.—was available to help stabilize operations, achieve consensus and maximize value.

5.     Today, after the chapter 11 filing and the legal work performed during the period covered by the Application, the situation is completely different. Primorsk is run by an independent Chief Restructuring Officer ("CRO"). The CRO reports directly to the Debtors' boards of directors, a majority of whom are independent of management. All vessels are under

the care and custody of Primorsk and its CRO.  The business is operating profitably, assisted by

a package of appropriate "first day" relief granted by this Court.  Primorsk—which did not need

debtor-in-possession financing—had $8 million in cash as of its April 2016 monthly operating

report [Docket No. 178].  The Debtors are performing under new charterparty arrangements,

earning over $2 million of operating profit every month *after payment of interest to the Senior*

*Lenders*.  The new charterparty arrangements are pending assumption or rejection, and

effectively constitute nine separate 'options' of Primorsk (or any buyer) to assume or reject when

appropriate.  The result has been to establish a "floor" of guaranteed cash flow during the three-

year charter term—an arrangement of considerable value in an industry where prices fluctuate

severely.

        6.     The Senior Lenders benefit from an adequate protection package that

provides current payment of interest, current payment of legal and financial advisory expenses,

the pledge of postpetition collateral, the waiver of surcharge and marshalling, and other

accommodations not available outside of chapter 11.  Proper corporate governance has been

established:  the boards of directors of Primorsk and the other Debtors are briefed as to chapter

11 and, together with the CRO, have approved the chapter 11 filing and authorized each of the

major decisions by the Debtors in these cases.  The original plan of reorganization (filed early

because of a Senior Lender requirement in the cash collateral order) provides a template for

substantial elements of the future plan and disclosure statement.  Sale procedures have been

approved by the Court and are supported by all stakeholders.  The CRO and S&C have overseen

a due diligence process involving dozens of interested parties to ensure management

cooperation.  Numerous initial bids for the Debtors' vessels are expected tomorrow and a robust

competitive auction within a few weeks.  After the auction, with approval from this Court, the

SC1:4152134.5

vessels will be delivered to the buyer pursuant to section 363 of the Bankruptcy Code free and clear of liens or litigation risk and, pursuant to section 365 of the Bankruptcy Code, with or without charterparty arrangements at the election of the buyer.   In the event stakeholders do not like the price established by the bankruptcy auction, reorganization alternatives have been fully preserved.

7.    None of this would be possible without the chapter 11 filing and the supervision of this Court.  It is no surprise that there has never been an objection by the Senior Lenders or any other stakeholder to the appropriateness of the chapter 11 filing.

8.    At heart, the Objection says the Senior Lenders would like the *benefits* of chapter 11 without paying its costs.  That would be inappropriate.  The outcome of any case is uncertain while the case is underway.  Facts change.  Value changes.  The Senior Lenders have enjoyed the protections provided to all stakeholders by chapter 11, but even their own adequate protection arrangements contemplate the ordinary payment of S&C's allowed fees as part of the *quid pro quo*.

9.    Instead of addressing the merits of the Application, the Objection merely complains about the initial plan.  However, the key fact about the initial plan criticized by the Senior Lenders is that it was filed early on a schedule dictated by the Senior Lenders in the cash collateral order.  The plan was prepared based on representations made and the facts known to AlixPartners and S&C at the time.  S&C has informed the Senior Lenders that it had no pre-existing client relationship with the Debtors' controlling owners, the  Debtors' managing agent, Prisco (Singapore) Pte Ltd (the "Managing Agent") or Nicos Peratikos, who represented to the Debtors that he was the beneficial owner of a majority of the Debtors' prepetition unsecured bonds.  To the contrary, at the time these chapter 11 cases were filed, S&C recognized the

-5-

existence of conflicts of interest and made clear to all relevant parties that S&C would be retained as legal counsel only to the Debtors. As counsel to the Debtors, S&C acted at arm's length with the controlling owner, the Managing Agent and Mr. Peratikos, each of which had other counsel. S&C has informed the Senior Lenders that the disclosure statement filed by the Debtors on March 15, 2016, including specifically the statement cited in the Objection regarding the lack of an affiliate relationship between Mr. Peratikos and the Debtors, was reviewed and commented on by New York bankruptcy counsel to Mr. Peratikos and/or his holding companies prior to the filing of the disclosure statement with the Court.

10.      As stated in the Application, S&C submits that the services for which it seeks compensation pursuant to the Application were necessary for and beneficial to the Debtors' administration of their estates and their reorganization efforts, and performed at the direction of the CRO with the authorization of the Debtors' boards of directors. The Objection states no legal basis for the Court to find otherwise. Accordingly, S&C respectfully requests that the Court overrule the Objection and grant the relief requested in the Application.

SC1:4152134.5

Dated:   June 14, 2016
           New York, New York

*/s/ Andrew G. Dietderich*
Andrew G. Dietderich
Brian D. Glueckstein
Alexa J. Kranzley
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588
E-mail:      dietdericha@sullcrom.com
               gluecksteinb@sullcrom.com
               kranzleya@sullcrom.com

*Counsel to the Debtors and*
*Debtors-in-Possession*

SC1:4152134.5