McGUIREWOODS LLP
Shawn R. Fox
1345 Avenue of the Americas
Seventh Floor
New York, NY 10105-0106
T: 212-548-2165
F: 212-548-2150
sfox@mcguirewoods.com

and

Mark E. Freedlander
PA Bar ID # 70593
Frank J. Guadagnino
PA Bar ID # 309768
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222-3142
Telephone:  (412) 667-6000
Facsimile:  (412) 667-6050
mfreedlander@mcguirewoods.com
fguadagnino@mcguirewoods.com

*Counsel to Tesoro Far East Maritime Company*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PRIMORSK INTERNATIONAL SHIPPING LIMITED, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 16-10073 (MG)<br><br>Related to Doc. Nos. 164, 256 |

**OBJECTION OF TESORO FAR EAST MARITIME COMPANY TO ASSUMPTION
AND ASSIGNMENT OF CHARTER PARTY**

Tesoro Far East Maritime Company ("Tesoro"), by its undersigned counsel, submits this

Objection (the "Objection") pursuant to the *Order (A) Approving the Bid Procedures and*

*Certain Bidding Protections, (B) Approving the Notice Procedures, (C) Authorizing the Debtors*

*to Set a Date for the Sale Hearing and (D) Approving Assumption and Assignment Procedures*

1

(the "<u>Bid Procedures Order</u>") [Doc. No. 164], objecting to the Debtors' proposed assumption and assignment of a certain charter party to Myrtle Marine Incorporated ("<u>SCF</u>"), a nominee of SCF Tankers Limited on grounds that SCF cannot provide adequate assurance of future performance as required under section 365(f) of the Bankruptcy Code.  In support of its Objection, Tesoro respectfully represents as follows:

## **<u>INTRODUCTION</u>**

1.      Tesoro objects to the proposed assumption by the Debtors and assignment of the charter party to SCF due to SCF's stated intention to replace the technical manager of the vessel that transports oil in the winter months of the North Pacific and the ice-laden Cook Inlet for Tesoro and certain other major oil companies that subcharter the vessel from Tesoro in the ordinary course.  Due to the challenging conditions navigated by the subject vessel, and because any change in technical manager would undoubtedly have significant economic consequences for Tesoro, Tesoro expressly bargained for the right to retain the vessel's current technical manager throughout the duration of the charter.  Indeed, Debtors acknowledged these bargained-for rights post-petition on March 9, 2016, when the charter was most recently amended.  Nevertheless, Debtors and their proposed assignee now seek to avoid these contractual rights by assigning the charter to a party which admittedly intends to replace the technical manager without Tesoro's consent.  Any such assignment will not only destroy the economic benefit of the charter to Tesoro, but could also subject Tesoro to significant operator risk to which Tesoro neither contracted nor has agreed.  Moreover, Tesoro has learned from speaking with the master of the vessel that SCF, despite the fact that the Court has not yet approved the assignment of the charter, and despite notice from Tesoro that it will not consent to a change in technical manager, has nevertheless instructed the vessel to proceed to Singapore for a change in technical manager

and crew.  Accordingly, Tesoro respectfully objects to the assumption and assignment of the charter as adequate assurance of future performance has not been provided by SCF.

## PROCEDURAL HISTORY

2.      On January 15, 2016, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code").

3.      On April 19, 2016, the Debtors sought approval to market and sell certain of its ocean-going vessels via the *Debtors' Motion for Orders (I) (A) Approving the Bid Procedures and Certain Bidding Protections, (B) Approving the Notice Procedures, (C) Authorizing the Debtors to Set a Date for the Sale Hearing and (D) Approving Assumption and Assignment Procedures and (II) Authorizing (A) the Sale of the Debtors' Vessels Free and Clear of All Claims and Interests and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith* (the "Bid Procedures Motion") [Doc. No. 148].

4.       On April 29, 2016, this Court entered the Bid Procedures Order approving the Bid Procedures Motion.

5.      On June 30, 2016, in accordance with the Bid Procedures Order, an Auction was held for the sale of the vessels, at the conclusion of which SCF was named the Successful Bidder.  *See Notice of Successful and Alternate Bidders* [Doc. No. 198].

6.      On July 7, 2016, this Court held a hearing to approve the sale to SCF and, on July 13, 2016, this Court entered the *Order Authorizing (A) the Sale of the Debtors' Vessels Free and Clear of All Claims and Interests, (B) the Assumption and Assignment of Certain Executory*

*Contracts and Unexpired Leases in Connection Therewith and (C) Wind-Down Expenditures and Distributions to Term Loan Lenders* (the "Sale Order") [Doc. No. 216].

7.    On September 8, 2016, the Debtors filed and served on Tesoro their *Notice of Proposed Assumption and Assignment to Myrtle Marine Incorporated of a Time Charter* (the "Notice of Assignment") [Doc. No. 256].

8.    The Notice of Assignment provides that the Debtors seek to assume and assign to SCF a certain vessel charter dated October 12, 2012 (the "Charter"), pursuant to which Tesoro charters the M.T. Zaliv Amerika from Boussol Shipping Limited ("Primorsk"), as Primorsk International Shipping Ltd.'s nominee.

9.    The Notice of Assignment further provides that any objections to the assumption and assignment of the Charter must be filed by September 15, 2016 at 4:00 P.M. (EST).  For reasons discussed in greater detail below, Tesoro hereby objects to the assumption and assignment of the Charter because SCF admittedly does not intend to fully perform its obligations thereunder and, therefore, the Debtors cannot satisfy section 365(f)(2)(B) of the Bankruptcy Code.

## BACKGROUND

10.    On October 12, 2012, Tesoro and Primorsk entered into the Charter pursuant to which Tesoro charters the M.T. Zaliv Amerika (the "Vessel").[1]

11.    The Charter has been amended on six (6) separate occasions by way of addendums dated October 12, 2012, October 24, 2012, July 31, 2013, March 13, 2014, and April 22, 2015, and March 9, 2016.  Each addendum, among other things, added material terms and

---

[1] The terms and conditions of the Charter are confidential and accordingly have not been included with this Objection.  Tesoro believes that the Debtors and SCF are in possession of the Charter, and Tesoro intends prior to a hearing on this matter to seek Court approval to file a copy of the Charter as **Exhibit** A to this Motion under seal for purposes of an *in camera* review.

extended the period of the charter, such that the period of the Charter **currently expires in approximately six months, on April 1, 2017**. *See* Exhibit A, p. 5 of 117 (Addendum No. 6).

12.     The Vessel is a time-chartered, ice-class vessel used by Tesoro or other major oil refiners, trading companies, and other third parties in their capacity as subcharterers from Tesoro, each in its ordinary course of business, for transporting oil and oil-related products between the Far East and Alaska, and routinely navigates waters in the North Pacific and specifically the Cook Inlet off the coast of Alaska.

13.     As is customary, the Vessel's safe operation is overseen by a technical manager, which is responsible for all aspects of the Vessel's repair and maintenance, including safe navigation.  In an effort to maintain good standing, protect valuable cargo, and avoid potentially dramatic economic losses resulting from operator error, Tesoro maintains rigorous standards for safety and environmental stewardship and thoroughly vets the technical managers retained to manage its chartered vessels.  The Vessel's current technical manager, Prisco (Singapore) PTE Ltd. ("Prisco"), is highly reputable and particularly skilled with respect to safe management of vessels that operate in geographically challenging bodies of water that are prone to hazardous weather conditions, such as those in the North Pacific and the Cook Inlet off the coast of Alaska.

14.     When the Vessel is not being used in Tesoro's oil trade, the Charter provides Tesoro with the ability to subcharter the Vessel to other major oil companies ("MOC"), such as ExxonMobil, Shell, and Chevron, from which Tesoro derives substantial economic benefit.  *See* Exhibit A, pp. 32-33 of 117 (Charter Clause 18).  As a practical matter, Tesoro is able to subcharter the Vessel to other MOCs because other major oil companies have previously approved Prisco for the Vessel.  It is generally well known in the industry that the strength of a

vessel's technical manager is a critical factor for MOCs in determining whether to charter that particular vessel.

15.     MOC approvals of the Vessel and technical manager are therefore critical to Tesoro's ability to subcharter the vessel, but are also mandated because, in any event, without such MOC approvals, the Vessel would be unable to load and offload at MOC terminals. Accordingly, Time Charter Rider Clause 9 specifically provides that the Vessel must be "APPROVED BY MIN 5 MOC OUT OF EXXONMOBIL, SHELL, BP, AMOCO, CHEVRON, BHP(RIGHTSHIP) AND CONOCOPHILLIPS" and "MAINTAINED TO A TECHNICAL STANDARD TO BE ACCEPTABLE TO ABOVE MENTIONED MAJOR OIL COMPANIES UNDER THE OCIMF SIRE INSPECTION PROGRAMME." *See* Exhibit A, p. 46 of 117 (Time Charter Rider Clause 9).

16.     Further, the fifth addendum to the Charter entered into April 22, 2015 ("Addendum No. 5") contains the following additional clause  ("Additional Clause 02"), which was specifically insisted upon by Tesoro:

> THE OWNERS SHALL NOT SELL THE VESSEL TO AN UNRELATED THIRD PARTY, OR HAVE THE VESSEL SOLD, OR ALLOW ANY CHANGE TO THE VESSELS' MANAGERS OR CLASSIFICATION SOCIETY THROUGHOUT THE CURRENCY OF THIS TIME CHARTER WITHOUT THE PRIOR WRITTEN CONSENT FROM [TESORO].  SUCH CONSENT NOT TO BE UNREASONABLY WITHHELD FOR THE SALE OF THE VESSEL *BUT TECHNICAL MANAGER AND CLASSIFICATION SOCIETY SHOULD BE MAINTAINED THROUGHOUT THE CHARTER*.

*See* Exhibit A, p. 13 of 117 (Addendum No. 5) (emphasis added).  The sixth addendum, which was executed following the commencement of the Debtors' bankruptcy cases on March 9, 2016 and extended the period of the Charter to approximately April 1, 2017 ("Addendum No. 6"), expressly incorporates each previous addendum including Addendum No. 5.  *See* Exhibit A, p. 10 of 117 (Addendum No. 6).

6

17.     The foregoing Additional Clause 02 was specifically required by Tesoro in negotiations in order to avoid the very circumstances Tesoro now faces by this proposed assignment of the Charter.  Given the financial condition of the Debtors and the likelihood that the Debtors may need to sell the Vessel to a third party, Tesoro required assurances that any new purchaser of the Vessel would retain the same technical manager (and crew) approved by Tesoro at the commencement of the Charter.

18.     A change in technical manager has a material and adverse economic impact on Tesoro's ability to use the Vessel for transportation of its petrochemicals and/or subcharter the Vessel.   First, when a change of technical manager occurs all previous approvals by MOCs that subcharter from Tesoro must be obtained anew.    This approval process ordinarily requires a period of approximately 90 days, which represents almost 50% of the remaining term under the Charter.   Thus, regardless of the qualifications or skill of SCF Management, the change in technical manager will essentially disqualify Tesoro from gainfully utilizing the Vessel for a period of approximately half of the remaining period of the Charter.

19.     In the oil industry, a change in technical manager means that an affected vessel will have a new Safety Management System ("SMS"), which is the operating system used by the vessel's crew to guide them in company procedures and operational safety policies and procedures.  A change in technical manager is also often accompanied by a change of crew members, and the new crew members must then become familiar with both the vessel and the SMS.  While the crew is transitioning, the new technical manager must attend every cargo transfer undertaken by the vessel until the new technical manager can demonstrate to the charterer (Tesoro) that it has confidence in the new crew to safely manage the ship.  During this transitional phase Tesoro will implement a risk mitigation measure requiring a shore-based

technical manager superintendent to attend every transfer operation in conjunction with a Tesoro

Marine Superintendent.  The transition process ordinarily requires a period of between thirty to

sixty days due to the time it takes for the new technical manager and crew to familiarize

themselves with the ship, and begin developing and implementing its new operational and

maintenance systems.  This transition period is further complicated by the geographic challenges

and weather conditions within the areas of Alaska through which the Vessel customarily

operates.  For these reasons, as a rule, Tesoro will not consent to a change in technical manager

for one of its time-chartered vessels.

        20.    Given the value of cargo held in the vessels and the magnitude of potential

liabilities that may arise against charter parties like Tesoro resulting from operator error, a

number of different factors are considered when a party such as Tesoro determines whether to

charter or subcharter a specific marine vessel for use in transportation of petrochemicals.

Tesoro, for instance, will not approve a vessel that has changed its technical manager unless

Tesoro has a recent and relevant positive history with the new technical manager.  In the absence

of a positive and recent commercial relationship, to gain approval status, the vessel, under the

oversight of the proposed technical manager, must conduct at least two (2) SIRE inspections

during discharge operations with satisfactory outcomes.  "SIRE," or Ship Inspection Report

Exchange, is the system utilized by MOCs under the auspices of the Oil Companies International

Marine Forum ("OCIMF"), and used in the oil trading industry to ensure that vessels that are

chartered comply with OCIMF standards.  This process can take approximately ninety (90) days

due to a vessel's trading pattern and applicable OCIMF rules that require at least thirty (30) days

to pass between SIRE inspections.

21.     Most MOCs mandate approval requirements similar to that of Tesoro, and will not approve a vessel until after a SIRE inspection is conducted during a cargo discharge transfer operation.  Further, because the Vessel at issue navigates in the North Pacific just south of the Aleutian Chain and Cook Inlet, which are among the most challenging in the world given the geography of the region, the prevalence of heavy ice and storm systems encountered in the region, the vetting process for technical managers is far more rigorous both for Tesoro and other major oil companies, and will necessitate that the new technical manager be experienced in these conditions and geographical areas.  Tesoro is among the largest transporters of oil in Alaska and its environmental stewardship is the utmost importance.  Prisco, the Vessel's current technical manager, and the Vessel's current crew all benefit from substantial experience with marine operations in Cook Inlet and North Pacific crossings during heavy weather conditions, which make the Vessel attractive to other MOCs looking to subcharter a vessel that operates in this region.

22.     For the reasons described herein, the continued retention of the current technical manager (and crew) is a critical component of Tesoro deriving the full use and economic benefit of the Charter currently at issue.  Tesoro would not have extended the Charter in Addendum No. 5 or Addendum No. 6 without the protections afforded Tesoro under Additional Clause 02 of Addendum No. 5.

23.     Tesoro's concerns giving rise to Additional Clause 02 have now come to fruition as the Notice of Assignment states that SCF intends the technical management of the Vessel to be overseen not by Prisco but instead by its in-house technical manager, SCF Management Services (Dubai) Limited ("SCF Management").  *See* Notice of Assignment, p. 2 of 5.  Tesoro is

also informed through communications with SCF that SCF also intends to immediately replace half of the Vessel's crew.

24.    Tesoro does not approve of the change in technical manager from Prisco to SCF Management or of any change to the Vessel's crew.  Approximately six months of the Charter period remain, and as demonstrated above, any change in technical manager will render the ship untradeable for a two to three month period at minimum.  Further, upon information and belief, SCF Management intends to assign the technical management duties to a branch office in Cyprus that has not even been formed as of this writing.  Accordingly, Tesoro submits that the duly noticed change in technical manager violates Additional Clause 02, which provision is undeniably a material term of Addendum No. 5, and without which Tesoro submits the Charter would not have been extended by Tesoro.

25.    Tesoro has been in communication with SCF and the Debtors regarding Tesoro's strong opposition and thus lack of consent to the change in technical manager.  Accordingly, Tesoro has made clear its intention, subject to approval by this Court, to re-deliver the Vessel in accordance with the terms and conditions of the Charter.   As more fully explained below, given Tesoro's lack of consent to the technical manager change proposed by SCF, SCF cannot as a matter of law provide Tesoro adequate assurance of future performance under the Charter as required for assignment of the Charter under 11 U.S.C. § 365(f)(2)(B).

## ARGUMENT

26.    Section 365 of the Bankruptcy Code generally allows for the debtor in possession or trustee to assume or reject any executory contract of the debtor.  11 U.S.C. § 365(a). However, the trustee or debtor in possession "may assign an executory contract . . . only if . . .

adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease."  11 U.S.C. § 365(f)(2)(B).

27.    "Adequate assurance of future performance" is not defined in the Bankruptcy Code, but "the legislative history of the Code shows that [the term was] intended to be given a practical, pragmatic construction."  *In re Sapolin Paints, Inc.*, 5 B.R. 412, 420 (Bankr. E.D.N.Y. 1980).  The term is adopted from Uniform Commercial Code section 2-609, which provides that "when reasonable grounds for insecurity arise with respect to the performance of either party, the other may, in writing, demand adequate assurance of future performance . . . ."  *See In re Sapolin Paints,* 5 B.R. at 421 (quoting U.C.C. § 2-609(1)).

28.    While "adequate assurance of future performance" is undefined in the Bankruptcy Code, this Court has previously endorsed the suggestion that the definition should "generally be the same as in Section 365(b)."  *In re U.L. Radio Corp.*, 19 B.R. 537, 541 (Bankr. S.D.N.Y. 1982) (quoting Fogel, *Executory Contracts and Unexpired Leases in the Bankruptcy Code*, 64 Minn. L. Rev. 341, 360 (1980)).  The *U.L. Radio* Court noted that Congress explained the concept of "adequate assurance of future performance" in that context as follows:  "If a trustee is to assume a contract or lease, the courts will have to insure that the trustee's performance under the contract or lease gives the other contracting party the full benefit of the bargain."  *Id.* (quoting Report of the Committee on the Judiciary, *Bankruptcy Reform*, S. Rep. No. 95-989, 95th Cong., 1st Sess. 347 (1977)).

29.    Although in *U.L. Radio*, the Court ultimately authorized a contested assignment of a lease including use restrictions, in that specific instance, the "court found no evidence of any economic detriment to the landlord and nothing was mentioned as to an effect on the other business tenants in the building."  *In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 306 (Bankr.

S.D.N.Y. 1983) (citing *U.L. Radio*, 19 B.R. at 544-45)).  In the shopping center context, this Court in *TSW Stores of Nanuet, Inc.* determined that a shopping center lease could not be assigned because the proposed assignee admittedly intended to modify an existing restrictive use clause in the lease which the Court found would in all likelihood harm both the landlord and the tenants in the shopping center.  *Id.* at 307-08.

30.     Similarly, the Third Circuit Court of Appeals has noted that the resolution of whether adequate assurance of future performance has been provided does not depend solely on whether a particular term of the lease to which the assignee intends to modify is "economically" material, but rather "the focus is rightly placed on the importance of the term within the overall bargained-for exchange; that is, whether the term is integral to the bargain struck between the parties (its materiality) and whether performance of that term gives a party the full benefit of his bargain (its economic significance)."  *In re Fleming Cos.*, 499 F.3d 300, 306 (3d Cir. 2007).

31.     In *Fleming Cos.*, the Third Circuit Court of Appeals affirmed the decisions of the courts below to prohibit the assignment of a grocery supply agreement where the proposed assignee did not intend to comply with a provision in the agreement mandating that groceries be delivered from a certain warehousing facility.  *Id.* at 308.  The court found that it was clear that such provision was material and that, even though the assignee committed to delivering the groceries at the same price, the counterparty "also bargained for the benefits of expedience, of a trained staff, a consistent supply of products, and a proven electronic system of record-keeping which furthered Albertson's marketing and pricing plans, all of which were only available" from the facility in question.  *Id.* at 307.  The court recognized that "a fine line exists between reading a contractual term as a burdensome obligation or as a *de facto* restriction on assignment.  However, we draw the line where a party refuses to accept part of the contract's obligations, and

12

as a result it cannot perform a material bargained-for term of the contract." *Id.* at 308. The court

noted that "[a]n assignment is intended to change only who performs an obligation, not the

obligation to be performed." *Id.* (quoting *Medtronic Ave., Inc. v. Advanced Cardiovascular

Systems, Inc.*, 247 F.3d 44, 60 (3d Cir. 2001)).

32.    Here, as described above, Additional Clause 02, which limits a change in

technical manager of the Vessel to instances where Tesoro consents, was absolutely critical

because of, *inter alia,* (1) the Vessel's current technical manager is already approved by the oil

companies to which Tesoro subcharters the Vessel, (2) the two to three month delays associated

with regaining such approvals after a change in technical management, and (3) the current

technical manager's experience in navigating icy Alaskan waters in the Cook Inlet, which

renders the Vessel more marketable to potential counterparties to a subcharter. Had Primorsk

not agreed to Additional Clause 02, Tesoro would not have executed Addendum No. 5 or

Addendum No. 6 and the Charter would have expired by its own terms on or about April 1,

2015. *See* Exhibit A, p. 17 of 177 (Addendum No. 4 extending period of Charter 12 months +/-

one (1) month in Tesoro's option effective from May 1, 2014).

33.    As in *TSW Stores* and *Fleming*, the proposed assignee, SCF, admittedly does not

intend to perform a material and bargained-for obligation of the contract which is proposed to be

assumed and assigned, and therefore cannot provide adequate assurance of future performance as

a matter of law. Also like *TSW Stores* and *Fleming*, Additional Clause 02 is not a disguised anti-

assignment provision or ipso facto provision. Tesoro has no contractual right to object to the

assignment of the underlying Charter provided that the proposed assignee proposes to honor and

can fulfill  the terms and conditions of the Charter. However, in this case, SCF's stated intention

to replace Prisco with SCF Management will (i) violate Additional Clause 02, (ii) deny Tesoro

the benefit of its bargain by essentially rendering the Vessel untradeable for a period of at least two to three months, and (iii) require Tesoro to accept risks with a replacement technical manager that Tesoro is not prepared on a business basis nor required as a matter of contract to accept.

34.    Given the circumstances of the Vessel under the oversight of its current technical manager and crew described herein, particularly given that only approximately six months remain in the Charter period, an assumption and assignment of the Charter as currently proposed by the Debtor and its assignee violates Tesoro's right to adequate assurance of future performance, thus mandating that the Court sustain the Objection and deny the currently proposed assumption and assignment of the Charter.

35.    The uncertainty surrounding the status of the technical manager under circumstances of the assumption and assignment of the Charter proposed by the Debtors renders the Vessel useless to Tesoro either for use in transporting petrochemicals for the benefit of Tesoro or through subcharter to another oil company.  Accordingly, Tesoro respectfully requests, as the Court's schedule may permit, an expedited hearing on this Objection so that the respective rights of the Debtors, Tesoro, and SCF may be determined.

## **RESERVATION OF RIGHTS**

36.    Alternatively, should the Court authorize assumption and assignment of the Charter over the Objection, Tesoro hereby reserves all rights to assert claims against SCF and administrative claims against the Debtors' estates for economic loss and for other applicable damages that may arise from or relate to the assumption and assignment, or breach of, the Charter.  In addition, Tesoro notes that the Charter mandates that any disputes arising under the Charter shall be referred to arbitration in London, England.  *See* Exhibit A, p. 41 of 117 (Charter

Clause 46(b)).  Tesoro expressly reserves its rights to make any and all arguments and claims with respect to the Charter in any future arbitration, without regard for *res judicata* or collateral estoppel issues that may arise from the entry of an order approving the assignment of the Charter.

## CONCLUSION

37.    Based on the foregoing, Tesoro respectfully requests that the Court enter an order denying the Debtors' proposed assumption and assignment of the Charter to SCF, permitting Tesoro to re-deliver the Vessel in accordance with the terms and conditions of the Charter, and granting Tesoro such other and further relief as the Court may deem just and proper.

[Signature Page to Follow]

DATED:  September 12, 2016

Respectfully submitted,

McGUIREWOODS LLP

/s/ Shawn R. Fox
Shawn R. Fox
1345 Avenue of the Americas
Seventh Floor
New York, NY 10105-0106
T: 212-548-2165
F: 212-548-2150
sfox@mcguirewoods.com

and

Mark E. Freedlander
PA ID # 70593
Frank J. Guadagnino
PA ID # 309768
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222-3142
Telephone:  (412) 667-6000
Facsimile:  (412) 667-6050
mfreedlander@mcguirewoods.com
fguadagnino@mcguirewoods.com

*Counsel to Tesoro Far East Maritime Company*