**BRYAN CAVE LLP**
Stephanie Wickouski (SW-5957)
Michelle McMahon (MM-8130)
1290 Avenue of the Americas
New York, New York 10104
(212) 541-2000
Stephanie.wickouski@bryancave.com
Michelle.mcmahon@bryancave.com

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

─────────────────────────────────── x
: 
In re                              :   Chapter 11
                                   :
                                   :   Case No. 16-10073 (MG)
PRIMORSK INTERNATIONAL SHIPPING    :
LIMITED, *et al.*,[1]              :   Jointly Administered
                                   :
                     Debtors.      :
─────────────────────────────────── x

**RESPONSE OF MYRTLE MARINE INCORPORATED TO OBJECTION
OF TESORO FAR EAST MARITIME COMPANY TO ASSUMPTION
AND ASSIGNMENT OF CHARTER PARTY AND IN SUPPORT OF
PROPOSED ASSUMPTION AND ASSIGNMENT**

Myrtle Marine Incorporated ("SCF"), a nominee of SCF Tankers Limited, the successful bidder for and buyer of certain vessels owned by the above-captioned debtors (the "Debtors"), submits this response to the Objection of Tesoro Far East Maritime Company to Assumption and Assignment of Charter Party (the "Objection") and in support of the proposed assumption of that certain Time Charter Party dated October 12, 2012, including all amendments and addendums

---

[1] The Debtors in these chapter 11 cases and, if applicable, the last four digits of their U.S. taxpayer identification numbers are: Primorsk International Shipping Limited (Cyprus), Boussol Shipping Limited (Cyprus) (6402) – m/t "Zaliv Amerika", Malthus Navigation Limited (Cyprus) (6401) – m/t "Zaliv Amurskiy", Jixandra Shipping Limited (Cyprus) (6168) – m/t "Prisco Alexandra", Levaser Navigation Limited (Cyprus) (0605) – m/t "Prisco Ekaterina", Hermine Shipping Limited (Cyprus) (0596) – m/t "Prisco Irina", Laperouse Shipping Limited (Cyprus) (0603) – m/t "Prisco Elizaveta", Prylotina Shipping Limited (Cyprus) (6085) – m/t "Prisco Elena", Baikal Shipping Ltd (Liberia) (6592) – m/t "Zaliv Baikal" and Vostok Navigation Ltd (Liberia) (1745) – m/t "Zaliv Vostok".

thereto (the "Charter"), to which Tesoro Far East Maritime Company ("Tesoro") is a counterparty and assignment of the Charter to SCF. In support of this Response, SCF states as set forth below. Additionally, in support of the Debtors' obligation to provide adequate assurance of SCF's future performance under the Charter and in response to Tesoro's Objection, SCF submits the Declaration of Sergey Popravko, filed contemporaneously herewith (the "Popravko Decl."). Mr. Popravko is the member of the Board of Directors and Managing Director – Technical Director of SCF Management Services (Dubai) Limited ("SCF Management Dubai") and Managing Director of SCF Management Services (Cyprus) Limited, f/k/a Unicom Management Services (Cyprus) Limited ("SCF Management Cyprus" and together with SCF Management Dubai, "SCF Management").

## Background

1. On January 15, 2016, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").

2. On April 19, 2016, the Debtors filed their Motion for Orders (I) (A) Approving the Bid Procedures and Certain Bidding Protections, (B) Approving the Notice Procedures, (C) Authorizing the Debtors to Set a Date for the Sale Hearing and (D) Approving Assumption and Assignment Procedures and (II) Authorizing (A) the Sale of the Debtors' Vessels Free and Clear of All Claims and Interests and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith (the "Bid Procedures Motion") [Doc. No. 148] seeking authority to market and sell certain of its ocean-going vessels and related contracts and assets, including the Charter. Tesoro did not file or raise any objections to the Bid Procedures Motion or the proposed assumption and assignment of its Charter as provided in the Bid Procedures.

3.     On April 29, 2016, this Court entered an order (the "Bid Procedures Order") approving the Bid Procedures Motion.

4.     On June 30, 2016, in accordance with the Bid Procedures Order, an Auction was held for the sale of the vessels, at the conclusion of which SCF Tankers Limited was named the successful bidder [Doc. No. 198].

5.     On July 7, 2016, this Court held a hearing to approve the sale to SCF Tankers Limited, or its nominees, and, on July 13, 2016, this Court entered the Order Authorizing (A) the Sale of the Debtors' Vessels Free and Clear of All Claims and Interests, (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and (C) Wind-Down Expenditures and Distributions to Term Loan Lenders (the "Sale Order") [Doc. No. 216]. Tesoro did not object to the Sale Order or to approval of the sale to SCF Tankers Limited, or its nominees.

6.     On September 8, 2016, the Debtors filed and served on Tesoro their Notice of Proposed Assumption and Assignment to Myrtle Marine Incorporated of a Time Charter (the "Notice of Assignment") [Doc. No. 256].

7.     Through the Notice of Assignment, the Debtors provided notice to Tesoro that they seek to assume and assign the Charter to SCF pursuant to the Sale Order.

8.     Pursuant to the Charter, Tesoro charters the M.T. Zaliv Amerika (the "Vessel") from Boussol Shipping Limited as Primorsk International Shipping Ltd.'s nominee.

9.     On September 12, 2016, Tesoro filed its Objection to the proposed assumption and assignment to SCF of the Charter. Tesoro's Objection is premised on the language in the Notice of Assignment stating that "SCF has represented to the Debtors that it is able to and intends to continue to perform the obligations under the Charter, and that SCF's ownership of

1948290.3                                3

Zaliv Amerika and the technical management of Zaliv Amerika by SCF's in-house technical manager SCF Management Services (Dubai) Limited, provides adequate assurance of future performance pursuant to 11 U.S.C Section 365(b)(1)(C)." Tesoro alleges that SCF's intention to replace the current technical manager of the Vessel, Prisco (Singapore) PTE Ltd ("Prisco") - an entity affiliated with the Debtors that is winding down and going out of business in approximately 45 days - with SCF Management Services (Dubai) Limited ("SCF Management") is a breach of the Charter that would permit Tesoro to terminate the Charter and re-deliver the Vessel and preclude the Debtors from assigning the Charter pursuant to Section 365(f)(2)(B).

### Argument

I. The Purported Restriction On Replacement Of The Technical Manager Of The Vessel Is A *De Facto* Anti-Assignment Provision Invalid Under Section 365(f) Of The Bankruptcy Code

10.    Section 365(f)(3) provides that an unexpired contract may not be terminated based on a provision that purports to terminate such contract on account of the assignment of that contract. Noting the express policy of Congress to favor assignment, courts in this circuit have interpreted this provision to include contract clauses that have the effect of preventing assignment as well as those labeled as anti-assignment clauses. *In the Matter of U.L. Radio Corp.*, 19 B.R. 537, 543 (S.D.N.Y. 1982) ("Any lease provision, not merely one entitled 'anti-assignment clause', would be subject to the court's scrutiny regarding its anti-assignment effect. The court could render unenforceable any provision whose sole effect is to restrict assignment, 'as contrary to the policy of [subsection(f)(3)]"), citing Report of the Committee on the Judiciary, *Bankruptcy Law Revision,* H.R.Rep.No.95-595, 95th Cong., 1st Sess. 347 (1977) and Report of the Committee on the Judiciary, *Bankruptcy Reform,* S.Rep.No.95-989, 95th Cong., 2d Sess. 58 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. *See also In re Peterson's Ltd.,*

1948290.3                                                     4

*Inc.,* 31 B.R. 524 (Bankr. S.D.N. Y. 1983) (finding that a strict construction of the use clause in a non-shopping center real estate lease so as to prevent the proposed assignment was unjustified).

11. In determining whether a certain contractual provision has the effect of prohibiting assignment, the courts look to the facts and circumstances of each case and weigh the relative harms. "Given the policy in the Bankruptcy Code against forfeitures of valuable assets of the estate such as unexpired leases, this court is of the opinion that each proposed lease assumption and assignment must be looked at on the basis of its own unique facts to ensure that a proper balance is reached between the landlord's rights and those of the debtor-tenant." *Id.* at 527 (holding that a use restriction was unenforceable where it would have barred assignment and the lease had a very defined use provision, there was only a short lease term remaining, and there was no evidence of other possible assignments consistent with the use term).

12. In *In re Crow Winthrop Operating Partnership*, 241 F.3d 1121 (9th Cir. 2001), the Ninth Circuit "look[ed] beyond the literal wording of [a] contractual provision to see whether it operates as a de facto anti-assignment clause in violation of § 365(f)" and affirmed the lower court's invalidation of certain change in ownership provisions in a settlement agreement under Section 365(f). *Id.,* citing *U.L. Radio*, 19 B.R. at 543. In *Crow Winthrop*, a settlement agreement entered into prior to bankruptcy included a change in control provision by which certain key components of the agreement would terminate if the debtor no longer owned certain office buildings. In other words, the settlement agreement did not prevent the debtor from assigning its rights thereunder or provide for termination if the debtor did so. Instead, termination was conditioned on the debtor's transfer or assignment of separate property. The debtor's reorganization plan transferred the property, and by separate motion the debtor sought approval to assign certain contracts (including the settlement agreement) to the transferee of the property.

After the transferee received termination notices under the settlement agreement, it brought a motion seeking to invalidate the change in ownership provision under Section 365(f). The Ninth Circuit affirmed the lower court's determination that the settlement agreement and ownership of the office buildings were "interwoven," and therefore termination of the former could not be conditioned on transfer of the latter pursuant to Section 365(f)(3). *Id.* at 1124.

13. Further, courts have also held that "Section 365(f)(1) works by operation of law to invalidate lease provisions which restrict <u>or discourage</u> a debtor-in-possession from assigning the lease." *In re Jamesway Corp.,* 201 B.R. 73, 76 (Bankr. S.D.N.Y. 1996) (emphasis added). In *Jamesway*, the bankruptcy court approved assignment of several leases without considering whether profit sharing provisions would be enforceable upon assignment. The assigned leases contained provisions requiring the debtor to pay over to landlord a portion of proceeds from any assignment. The *Jamesway* court explained that "Section 365(f)(1) works by operation of law to invalidate lease provisions which restrict or discourage a debtor-in-possession from assigning the lease." *Id.* at 76. "The essence of Subsections (1) and (3) [of § 365(f)] is that all contractual provisions, not merely those entitled 'anti-assignment clauses' are subject to the court's scrutiny regarding their anti-assignment effect." *Id.* at 78, quoting *In re Howe*, 78 B.R. 226, 229-30 (Bankr. D.S.D. 1987). Because the profit sharing provision limited the intrinsic value of the lease upon assignment, it was held to have no effect under Section 365(f)(1). *Id.* at 78-79.

14. Under the facts of this case, Tesoro's interpretation of Additional Clause 02 in Addendum No. 5 (as defined in the Objection), which SCF also disputes as set forth below, would preclude assignment of the Charter to any party. Thus, it has the effect of barring assignment and is unenforceable as an anti-assignment provision under Section 365(f) of the Bankruptcy Code given the facts of this case.

15. Maintaining Prisco as the technical manager of the Vessel as Tesoro demands is not possible, for SCF or any other assignee. As suspected by SCF and confirmed by the Debtors orally and in their papers submitted contemporaneously herewith in opposition to the Objection, Prisco is in the process of winding down its business and will cease to operate in approximately 45 days. SCF has been advised that as a result of the liquidation of the Debtors' businesses, Prisco will end up operating as a manager for a single other ship, which caused doubt regarding Prisco's ability to continue as a going concern and to maintain its SMS at a level required by first class industry standards. Popravko Decl. ¶¶14-15.

16. Accordingly, Tesoro is faced with a change in the technical manager of the Vessel regardless of whether SCF takes assignment of the Charter and installs SCF Management as the technical manager. Any alleged harm to Tesoro resulting from the change in technical manager is not attributable to the proposed assignment, but rather to the fact that Prisco being an affiliate of the Debtors is not able to survive as an independent third party ship management services provider without the Debtors' support after the disposal of the vessels pursuant to Sale Order.

17. In fact, as set forth in detail below, SCF has taken a number of steps to ensure continuity and quality of technical management of the Vessel and smooth transition from Prisco to SCF Management. Specifically, SCF and SCF Management have employed the vast majority of Prisco's crew and key officers and prepared a detailed Management of Change Plan for the transition.

18. Tesoro's failure to assert harm attributable to the proposed assignment is fatal to its position. As described in *U.L. Radio*, Tesoro must show that "actual and substantial detriment could be incurred by [it] <u>if the deviation [from the contract] was permitted</u>. *U.L. Radio*, 19 B.R. at 544 (emphasis added). Further, as noted by the court in *Peterson's* where there

is no other potential assignment that would be consistent with the strict enforcement of the lease, the debtor should not denied the ability to assign the lease to the proposed assignee. *Peterson's,* 31 B.R. at 527. Any other potential assignee of the Charter will be required to replace Prisco as the technical manager of the Vessel once it ceases operations in October. Thus, there is no other potential assignee that could take assignment of the Charter consistent with Tesoro's interpretation of Additional Clause 02 in Addendum No. 5. In light of Congress' bias in favor of permitting assignment, and considering the balance of the harms – which with respect to Tesoro will befall Tesoro regardless of whether the assignment occurs – the Court should not deprive the Debtors of the value of this asset by enforcing a provision of the Charter that would prohibit its assignment.

II.     SCF has Provided Adequate Assurance of its Future Performance under the Charter

19.     Section 365(f)(2)(b) of the Bankruptcy Code requires as a condition to assignment of a contract that the debtor provide "adequate assurance of future performance by the assignee of such contract or lease . . . . What constitutes adequate assurance is not defined in the Bankruptcy Code other than with respect to real property leases in shopping centers, which specific provisions are not applicable here." *U.L. Radio*, 19 B.R. at 541-42. The meaning of adequate assurance is within the discretion of the court, and the term is to be "given practical, pragmatic construction. What constitutes 'adequate assurance' is to be determined by factual conditions." *Id.* at 542. However, the party to be adequately assured "must exercise good faith and observe commercial standards; his satisfaction must be based upon reason and must not be arbitrary or capricious." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1310 (5th Cir. 1985). Generally speaking, adequate assurance focuses on the ability of the proposed assignee to meet its financial obligations under the contract. *Id. See also Richmond Leasing*,

762 F.2d at 1310. *See also In re Evelyn Byrnes, Inc.* 32 B.R. 825, 829 (Bankr. S.D.N.Y. 1983) ("Courts have consistently determined whether a debtor offered adequate assurance of future performance by considering whether the debtor's financial data indicated its ability to generate an income stream sufficient to meet its obligations, the general economic outlook in the debtor's industry, and the presence of a guarantee."); *In re Evelyn Byrnes,* 32 B.R. at 829 (holding that the primary concern of "adequate assurance" is financial performance of the assignee).  The meaning of "adequate assurance" under § 365(b) and (f) should be the same. *Cinicola v. Scharffenberger*, 248 F.3d 110, 129 n.10 (3d Cir. 2001), citing *Richmond Leasing Co.*, 762 F.2d at 1309-10.  *See also Ill. Inv. Trust No. 92-7163 v. Allied Waste Indus., Inc. (In re Res. Tech. Corp.)*, 624 F.3d 376, 383 (7th Cir. 2010) (tracing the history of the term "adequate assurance" to UCC 2-609 and explaining that it means "commercially reasonable under the particular circumstances of the case").

20. Tesoro has not raised any objections related to SCF's financial ability to perform its obligations under the Charter.  Tesoro's objections focus solely on the SCF's inability to maintain Prisco as the technical manager and vague allusions to a lack of comparable experience operating Vessels in harsh environments and icy waterways.  These objections are legally and factually baseless.

21. First, contrary to Tesoro's assertion, adequate assurance and the contract counterparty's receipt of the full benefit of its bargain do not require the Court to assure literal fulfillment by the assignee of each and every term of the bargain. *U.L. Radio*, 19 B.R. at 543. Anti-assignment clauses, including clauses that have the effect of prohibiting assignment, are excepted. *Id.*  As set forth in detail above, Tesoro's interpretation of Additional Clause 02 in

Addendum No. 5 has the effect of prohibiting assignment of the Charter and is therefore unenforceable under Section 365(f)(3) of the Bankruptcy Code.

22.     Tesoro's reliance on *In re TSW Stores of Nanuet, Inc.,* 34 B.R. 299 (Bankr. S.D.N.Y. 1983) and *In re Fleming Cos.,* 499 F.3d 300 (3d Cir. 2007) is misplaced because each of those two cases is distinguishable. *TSW Stores* involved the proposed intent to modify a restrictive use clause of a real estate shopping center to permit assignment and thus adequate protection was assessed under Section 365(b)(3), which is not applicable in non-shopping center cases. *TSW Stores,* 34 B.R. at 306-07. *See also U.L. Radio*, 19 B.R. at 542 (stating that requirements of Section 365(b)(3) do not apply to assumption and assignments of non-shopping center leases). Although the *Fleming* case bears a passing factual similarity to the present situation because there, as here, the proposed assignee argued that performance of a specific term of the contract was impossible, it is critically different in that the court found that proposed assignee was responsible for the facts making performance impossible and affirmed the lower courts' denial of the requested assumption and assignment *on that basis*. In that case, the proposed assignee directed the debtor to reject a specific warehouse facility lease despite language in a contract it sought to assume requiring service from that warehouse. *Fleming,* 499 F.3d at 303-304. The Third Circuit held that

> We recognize that a fine line exists between reading a contract term as a burdensome obligation or as a *de facto* restriction on assignment. However, we draw the line where a party refuses to accept part of the contract's obligations, and as a result it cannot perform a material bargained-for term of the contract. Here, [proposed assignee] rejected the Tulsa Facility lease, and now complains that it is impossible comply with an integral term of the contract. This term could have been performed by some party. It is not now an anti-assignment provision simply because AWG made the decision not to take on a necessary burden.

*Id.* at 308. In contrast, here, Prisco decided to cease operations, thereby requiring a change in the technical manager of the Vessels, not SCF. Further, in light of this no other potential party could

perform Additional Clause 02 in Addendum No. 5 as interpreted by Tesoro. Thus, in contrast to the contractual provision in *Fleming*, Additional Clause 02 in Addendum No. 5 is a *de facto* restriction on assignment.

23.     Second, SCF has extensive experience as a manager and operator of vessels that "operate in geographically challenging bodies of water that are prone to hazardous weather conditions, such as those in the North Pacific and the Cook Inlet off the coast of Alaska" (Objection, ¶13) and is more than qualified to satisfy all of its obligations under the Charter.

24.     Sovcomflot has 25 years of experience of successful management of owned and chartered fleet of tanker vessels. As of today Sovcomflot owns 119 tanker vessels of various sizes, including 41 Aframaxes (which makes it the world's largest owner of crude Aframaxes based on metric tons deadweight capacity), which are similar to the Vessel. These vessels are currently managed through SCF Management and its branch offices. Information regarding SCF Management, including SCF Management Cyprus, was provided to Tesoro in August 2016. Popravko Decl. ¶8.

25.     SCF has top of the industry competence in operating vessels in harsh environments, such as those in the North Pacific and the Cook Inlet off the coast of Alaska. Almost 50% of SCF's fleet is the ice-classed vessels; SCF is the largest owner of ice-classed tankers based on metric tons deadweight and the largest operator of Arctic shuttle tankers. SCF's large-capacity "Suezmax" tanker, Vladimir Tikhonov, set a precedent in maritime history in 2011 for the ships of this size, namely over 160,000 metric tons deadweight (ice-class 1A), by completing the transportation of a full consignment of the gas condensate cargo using Northern Sea Route from Europe to Asia through the Arctic. In addition to its conventional fleet of tankers, SCF runs the ice-breaking supply and support vessels and ice-class tankers deployed on

various industrial projects above the polar circle and in other icy locations (for example, Ob Bay and Sakhalin Island). Due its well-known and recognized expertise SCF has been selected as an owner and operator for the pilot vessel to be the first in a series of fifteen ice-breaking Arc7 172.600cbm LNG carriers which will be deployed in transportation of LNG via Northern Sea Route from north of Russia to European and Asian ports. Popravko Decl. ¶9.

26. In 2011, SCF took over six shuttle tankers previously owned by Prisco that were on time-charters at that time to operators of the Sakhalin 1 and Sakhalin 2 projects (well known for difficult ice conditions during the winter seasons), such operators being an affiliates of Exxon and Shell. Those six vessels (amongst which is M.T. Zaliv Aniva, which is a sister ship of the Vessel) have been transferred to the management of SCF Management with majority of ex-Prisco crews preserved. Together with the acquisition of nine vessels (including the Vessel) from the Debtors, SCF became an owner of fifteen tankers previously owned and managed by Prisco, and in each case procured a smooth and efficient change of technical management which was combined with a take-over of the vast majority of ex-Prisco's seafarers and key shore personnel. Popravko Decl. ¶10.

27. Moreover, SCF and SCF Management have prepared a detailed Management of Change Plan for the take-over of the Vessel from Prisco's management, which includes employing certain ex-Prisco crews and the retention of selected ex-Prisco shore staff to ensure a seamless transition to SCF ownership and management without any disruption to the Vessel's operations. The Vessel will be crewed by a mixture of ex-Prisco seafarers and SCF seafarers to ensure that the TCP Matrix / OCIMF Matrix (as defined in the Charter) is complied with, as well as familiarity the SMS and IT systems in use. Further, SCF superintendents will sail with the

Vessel for the first voyage following the transfer of management to provide appropriate training. Popravko Decl. ¶¶11-13.

28.     SCF will endeavour to arrange a fresh Ship Inspection Report Exchange ("SIRE") inspection during the Vessel's first discharge to ensure the Vessel's full trade ability. Popravko Decl. ¶17. SCF operates under an common integrated Safety Management System (the "SMS"),[2] that complies with the ISM Code, ISO 9001 and ISO 14001 and works towards continual improvement in HSSE performance:

- There were no spills recorded in 2015;
- No PSC (Port State Control) detentions in 2015;
- Average reported observations per ship inspection (SIRE) are 2.9 reduced by more than half since 2010 (5.4); and
- Injury frequency (LTIF*) of 0.42 is now about 2 times lower than industry average (1.0**).

Thus, with respect to all enforceable obligations of the Charter, SCF has provided adequate assurance of its ability to perform. Popravko Decl. ¶7.

III.    Tesoro's Interpretation of the Charter is Inaccurate

29.     Tesoro asserts several inaccurate interpretations of various sections of the Charter, including: Charter Rider Clause 9 and Additional Clause 02 in Addendum No. 5.

30.     Tesoro asserts that Charter Rider 9 requires "approved by min 5 MOC out of Exxonmobil, Shell, BP, Amoco, Chevron, BHP(Rightship) And Conocophillips" and "maintained to a technical standard to be acceptable to <u>above mentioned</u> major oil companies under the OCIMF SIRE inspection programme." Objection, ¶15. Further, Tesoro asserts that the

---

[2] Safety Management System (SMS) – is an organized system of the policies, practices, and procedures that are to be followed by the crews onboard and the shore operating personnel to ensure safe functioning of ships at sea. The legislative requirement for SMS is laid down in the International Safety Management Code ("ISM Code") which have been incorporated as chapter IX of the International Maritime Organization's ("IMO") International Convention for the Safety of Life at Sea ("SOLAS")

change in the technical manager would negate the existing MOC approvals and would require all new approvals by MOCs, which would take Tesoro approximately 90 days to obtain and impose significant economic hardship on Tesoro. Objection, ¶18. While it is accurate that new MOC approvals would have to be obtained, it is not necessary that this process take 90 days. MOC approvals can be reinstated without waiting 90 days when the Vessel passes SIRE inspection at her first discharge after change of technical manager has occurred.[3] As described above and in the Popravko Decl., SCF plans an SIRE inspection by STATOIL at the end of the Vessel's first voyage. If SIRE inspection is passed, then the Vessel will be deemed accepted by all MOCs (other than Chevron, which is currently requiring a 90 day time frame after change of management to accept the vessel), which is a sufficient number of MOCs to satisfy Charter Rider 9. Popravko Decl. ¶17.

31.     Tesoro asserts that Additional Clause 02 in Addendum No. 5 requires that any new purchaser of the Vessel would retain the same technical manager (and crew) approved by Tesoro at the commencement of the Charter. Objection, ¶17. In support of this assertion, Tesoro relies on the bolded portion of the Additional Clause 02 in Addendum No. 5:

> The Owners shall not sell the Vessel to an unrelated third party, or have the Vessel sold, or allow any change to the Vessels' managers or classification society throughout the currency of this Time Charter without the prior written consent from the Charterers. Such consent not to be unreasonably withheld for the sale of the Vessel **but technical manager and classification society should be maintained throughout the charter.**

Objection, ¶¶16-17 (emphasis in original). Notably, no portion of this provision addresses the composition of the crew or any requirement that Tesoro consent to the make-up of the crew. Notwithstanding the lack of any obligation under the Charter, as set forth above, SCF has employed a majority of the former Prisco crew and officers. This employment of former Prisco

---

[3] Although Tesoro intimates that two SIRE Inspections are necessary to obtain MOC approvals (Objection, ¶20), only one SIRE Inspection is required for MOC approval. Popravko Decl. ¶17.

crew in combination with SCF's intent to have its superintendent attend the first voyage, first discharge and first SIRE inspection, will mitigate Tesoro's concern that a change in technical manager will mean a change of crew members, requiring the new crew members to become familiar with both the Vessel and new SMS.  Similarly, Tesoro's other concerns (Objection, ¶13 and 19) related to the change in technical manager are addressed by the employment of a former Prisco crew, in which Tesoro has expressed supreme confidence.  Objection, ¶¶13 ("[Prisco] is highly reputable and particularly skilled with respect to safe management of vessels . . . .") and 21 ("the Vessel's current crew all benefit from substantial experience with marine operations in Cook Inlet and North Pacific crossings during heavy weather conditions").  The remaining concerns raised by Tesoro relate to internal policies established by Tesoro with respect to selection of a technical manager and are not requirements of the Charter or applicable laws or regulations.[4]  Objection, ¶20.  As set forth in detail herein and in the Popravko Decl., SCF and SCF Management are more than qualified to satisfy these concerns.

32.     Nor is it clear from the language of Additional Clause 02 in Addendum No. 5 that Tesoro has the right to consent to the identity of the technical manager as it asserts.  It is an equally plausible reading of this language that it merely requires that the position of a "technical manager . . . should be maintained."  Tesoro has offered no evidence of the intent of the parties with respect to this provision.  This section of the Charter does not refer to Prisco or include any language referring to the technical manager.  As set forth in the Popravko Decl., it is not standard within the industry for a charterer to have the right to direct that a specific company be retained as the technical manager.  While it is standard in the industry for a vessel to have a technical manager, other than long term charters or charters for specially outfitted vessels for a specific purpose, it is not typical for a charterer to have rights to dictate the identity of the technical

---

[4] Tesoro's internal policies cannot override provisions of the Bankruptcy Code or the Charter.

manager. It is not a legal requirement for the Vessel to have a technical manager, rather it is practical mechanism by which vessel owners and operators satisfy safety and insurance requirements consistent with international conventions, including ISM code requirements. Employing a technical manger enables vessel owners and operators to concentrate and/or outsource these functions with one entity. Popravko Decl. ¶18.

33. Further, even if Tesoro's interpretation of Additional Clause 02 in Addendum No. 5 is accurate, Tesoro cites to no provision of the Charter or the Bankruptcy Code that would permit it to terminate the Charter and re-deliver the Vessel to the Debtors upon a violation of it. Tesoro has been advised by the Debtors that no such termination and re-delivery is permitted by the Charter and that any attempt to re-deliver the Vessel would be in violation of the automatic stay pursuant to section 362 of the Bankruptcy Code.

34. Finally, even assuming *arguendo* that Tesoro does have the right to consent to any change in the entity serving as technical manager, such consent cannot be unreasonably withheld under the language of Additional Clause 02 in Addendum No. 5. Tesoro has not asserted, and based on all of foregoing could not assert, any reasonable basis upon which to withhold its consent to SCF Management assuming the position of technical manager of the Vessel.

## Conclusion

35. Tesoro's insistence on maintaining Prisco as its technical manager despite the unreasonableness of this demand, lack of clarity that Tesoro has this right under the Charter and the fact that Prisco will cease operating in approximately 45 days is a bald attempt to thwart the assignment of its Charter to SCF and should be declared invalid as an anti-assignment provision. As set forth herein and in the Popravko Decl., SCF has sufficiently demonstrated adequate assurance of its ability to perform all enforceable obligations under the Charter. Accordingly,

SCF respectfully requests that the Court overrule the objection, approve the Debtors' assumption and assignment of the Charter to SCF and grant such other than further relief as is appropriate.

Date: September 16, 2016            **BRYAN CAVE LLP**

*/s/ Michelle McMahon*
Stephanie Wickouski
Michelle McMahon
1290 Avenue of the Americas
New York, New York 10104
(212) 541-2000
Stephanie.wickouski@bryancave.com
Michelle.mcmahon@bryancave.com

*Counsel to Myrtle Marine Incorporated, a nominee of SCF Tankers Limited*

# CERTIFICATE OF SERVICE

I, Michelle McMahon, hereby certify that the foregoing *Objection Response Of Myrtle Marine Incorporated To Objection Of Tesoro Far East Maritime Company To Assumption And Assignment Of Charter Party And In Support Of Proposed Assumption And Assignment* and the supporting *Declaration of Sergey Popravko* were served on September 16, 2016 upon the following parties by United States first class mail:

Sullivan & Cromwell LLP, 125 Broad St., New York, NY 10004 (Attn: Andrew Dietderich and Brian Glueckstein);

the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 201 Varick Street, Suite 1006, New York, NY 10014 (Attn: Richard Morrissey and Susan Arbeit);

White & Case LLP, 1155 Avenue of the Americas, New York, NY 10036 (Attn: Scott Greissman);

Luskin, Stern & Eisler LLP, Eleven Times Square, New York, New York 10036 (Attn: Richard Stern);

Shearman & Sterling LLP, 599 Lexington Ave., New York, NY 10022 (Attn: Douglas Bartner)

McGUIREWOODS LLP, Shawn R. Fox 1345, Avenue of the Americas Seventh Floor New York, NY 10105-0106

McGUIREWOODS LLP, Attn: Mark E. Freedlander and Frank J. Guadagnino, 625 Liberty Avenue, 23rd Floor Pittsburgh, PA 15222-3142


 */s/ Michelle McMahon*
Michelle McMahon