McGUIREWOODS LLP
Shawn R. Fox
1345 Avenue of the Americas
Seventh Floor
New York, NY 10105-0106
T: 212-548-2165
F: 212-548-2150
sfox@mcguirewoods.com

and

Mark E. Freedlander
PA Bar ID # 70593
Frank J. Guadagnino
PA Bar ID # 309768
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222-3142
Telephone:  (412) 667-6000
Facsimile:  (412) 667-6050
mfreedlander@mcguirewoods.com
fguadagnino@mcguirewoods.com

*Counsel to Tesoro Far East Maritime Company*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PRIMORSK INTERNATIONAL SHIPPING LIMITED, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 16-10073 (MG)<br><br>Related to Doc. No. 258 |

**DECLARATION OF MARK D. WILSON IN SUPPORT OF OBJECTION OF TESORO
FAR EAST MARITIME COMPANY TO ASSUMPTION AND ASSIGNMENT OF
<u>CHARTER PARTY</u>**

1

I, Mark D. Wilson, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the President of Tesoro Maritime Company, the parent company of Tesoro Far East Maritime Company ("Tesoro"), a position which I have held for two and a half years. My responsibilities include overall supervision of the vessel operations of Tesoro and specifically, focus on ensuring the safe operation of the vessels that Tesoro charters (leases) and sails in many environmentally sensitive areas such as Alaska.

2. I submit this declaration in support of the *Objection of Tesoro Far East Maritime Company to Assumption and Assignment of Charter Party* (the "Objection") [Doc. No. 258].

3. All statements contained herein are based on my personal knowledge or upon information and belief.

## Background

4. In the ordinary course of its business, Tesoro charters vessels for purposes of transporting oil and oil-related products primarily between the Far East, Alaska, and the U.S. West Coast, which requires the vessels to navigate the waters of the North Pacific just south of the Aleutian Chain and Cook Inlet off the Alaskan coast. Tesoro is one of the largest transporters of oil in Alaska.

5. The Cook Inlet, and the waters of the North Pacific during the winter months, are prone to hazardous weather conditions and are among the most geographically challenging bodies of water in the world to navigate.

6. Each vessel chartered by Tesoro is overseen by a technical manager, which is responsible for all aspects of the Vessel's operation, repair and maintenance as well as its navigation. In an effort to maintain good standing, protect valuable cargo, and avert potentially disastrous economic and environmental losses that could result from operator error, particularly

2

given the challenging and hazardous waters Tesoro-chartered vessels routinely navigate, Tesoro maintains rigorous standards for safety and environmental stewardship and thoroughly vets the technical managers retained to manage its chartered vessels.

7.    Apart from Tesoro's own vetting process, the reputation and operational history of a technical manager is a major factor in whether a certain vessel receives approval by other major oil companies ("MOCs") as well.  MOC approval is extremely critical to the economic value of a chartered vessel for two primary reasons.  First, for the vessel to dock at an MOC terminal and load or offload its cargo, it must have approval from that particular MOC.  The more MOCs that have approved the vessel for docking at their terminals or terminals they use, the greater potential utilization of the vessel in the oil trade.  Secondly, a typical charter party also allows for the ability of a charterer to subcharter the vessel to a third party, which is often an MOC.  It is well known in the oil transportation industry that the quality, reputation, and history of a technical manager plays a key role in the decision to charter a particular vessel. Accordingly, in general, the more MOC approvals that a particular vessel has obtained, the more marketable the vessel is to potential subcharterers.

**The Charter**

8.    On October 12, 2012, Tesoro and Boussol Shipping Limited ("Primorsk"), as Primorsk International Ltd.'s nominee, entered into the Charter[1] pursuant to which Tesoro charters the M.T. Zaliv Amerika (the "Vessel") from Primorsk.  The Vessel is an ice-class oil tanker suitable for transporting oil through the challenging waters of the North Pacific and Alaska during the winter months.

9.    The Charter has been amended on six (6) separate occasions by way of addendums dated October 12, 2012, October 24, 2012, July 31, 2013, March 13, 2014, April 22,

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Objection.

3

2015, and March 9, 2016. Each addendum, among other things, added material terms to the Charter and extended the Charter period, such that the period of the Charter currently expires in approximately six months, on April 1, 2017.

10. Because of the critical nature of MOC approvals for a vessel as described above, Time Charter Rider Clause 9 mandates that the vessel must at all times be approved by at least five of the following specifically identified MOCs: ExxonMobil, Shell, BP, Amoco, Chevron, BHP(Rightship), and ConocoPhillips. Rider Clause 9 mandates further that the Vessel "will be maintained to a technical standard to be acceptable to <u>above mentioned</u> major oil companies under the OCIMF SIRE Inspection programme."

11. "SIRE," or Ship Inspection Report Exchange, is the system utilized by MOCs under the auspices of the Oil Companies International Marine Forum ("<u>OCIMF</u>"), and used in the oil trading industry to ensure that vessels that are chartered comply with OCIMF standards. The SIRE system involves periodic inspections of a vessel during cargo discharge operations, generally referred to as SIRE Inspections.

12. The Vessel's current technical manager is Prisco (Singapore) PTE Ltd. ("<u>Prisco</u>"), which has served as technical manager of the Vessel from the inception of the Charter on October 12, 2012. Prisco is a highly reputable technical manager and particularly skilled with respect to safe management and operation of vessels in geographically challenging bodies of water that are prone to hazardous weather conditions, such as those in the North Pacific and the Cook Inlet during the winter months. Tesoro has not experienced any safety or environmental issues related to the Vessel during the time of the Charter, which it attributes, in large part, to the quality of Prisco as technical manager. Prisco also has approvals from MOCs for purposes of docking at terminals used or owned by the MOCs and for subchartering the Vessel.

4

13. In the first quarter of 2015, with the Charter then set to expire on its terms approximately May 1, 2015, Tesoro and Primorsk entered discussions regarding Addendum No. 5. At that time, it was evident that Primorsk was experiencing financial difficulties and Tesoro understood that there was a significant possibility that certain assets of Primorsk, including the Vessel, might be sold as part of a financial restructuring. Further, Tesoro understood that a new owner of the Vessel may attempt to replace the Vessel's technical manager, which would be unacceptable to Tesoro for many reasons.

14. First, as previously mentioned, as one of the largest transporters of oil in Alaska and because of the challenging and potentially hazardous nature of the waters in which the Vessel operates, Tesoro takes its environmental stewardship of the ocean and adjoining areas extremely seriously, at times, for instance, implementing new safety measures before such measures became mandated in the transportation of oil. Prisco has demonstrated to Tesoro over the course of the parties' relationship that it is highly skilled in overseeing the safe navigation of the waters of the North Pacific and Cook Inlet, and Prisco has a perfect safety record with the Vessel.

15. Secondly, the mere act of replacing the technical manager necessarily results in significant delays during which Tesoro cannot gainfully employ the Vessel. This is because when a technical manager is replaced, all MOC approvals previously obtained by a vessel must be renewed. This process of obtaining the new approvals ordinarily takes approximately ninety (90) days. The change in technical manager also results in the vessel having to create a new Safety Management System ("SMS"), which is the operating system used by the vessel's crew to guide them in company procedures and operational safety policies and procedures.

16. Additionally, a change in technical manager is often accompanied by a change of the vessel's crew members, and the new crew members must then become familiar with both the vessel and the new technical manager's SMS. While the crew is transitioning, the new technical manager must attend every cargo transfer undertaken by the vessel until the new technical manager can demonstrate to itself and to the charterer that the new crew can safely manage the ship. During this transitional phase, Tesoro would implement a risk mitigation procedure requiring a shore-based technical manager superintendent to attend every transfer operation in conjunction with a Tesoro Marine Superintendent. The transition process ordinarily requires a period of between thirty to sixty days due to the time it takes for the new technical manager and crew to familiarize themselves with the ship, and begin developing and implementing its new operational, safety and maintenance systems. As demonstrated by the Exxon Valdez and Gulf Oil spills and other environmental disasters, the safe operation of vessels and equipment involved in the retrieval or carriage of oil is of paramount importance to members of the oil industry and the public at large.

17. This transition process is further complicated in situations where, as with the Vessel, the vessel routinely navigates through geographically challenging and potentially hazardous waters such as those in the Cook Inlet and in the North Pacific during the winter months. For the foregoing reasons, as a general rule, Tesoro will not consent to a change in technical manager for one of its time-chartered vessels.

18. Thus, during negotiations over Addendum No. 5, Tesoro specifically negotiated the right to approve a change in technical manager for the Vessel to protect against the economic losses that would be incurred by Tesoro as a result of the delays attendant to a change in technical manager by a new owner of the Vessel and assignee of the Charter.

6

19. Specifically, Additional Clause 02 in Addendum No. 5 states:

> THE OWNERS SHALL NOT SELL THE VESSEL TO AN UNRELATED THIRD PARTY, OR HAVE THE VESSEL SOLD, OR ALLOW ANY CHANGE TO THE VESSELS' MANAGERS OR CLASSIFICATION SOCIETY THROUGHOUT THE CURRENCY OF THIS TIME CHARTER WITHOUT THE PRIOR WRITTEN CONSENT FROM [TESORO]. SUCH CONSENT NOT TO BE UNREASONABLY WITHHELD FOR THE SALE OF THE VESSEL *BUT TECHNICAL MANAGER AND CLASSIFICATION SOCIETY SHOULD BE MAINTAINED THROUGHOUT THE CHARTER*.

*See* Charter, Additional Clause 02, Addendum No. 5 (emphasis added).

20. Tesoro views Additional Clause 02 as highly material as without it Tesoro would not have entered into Addendum No. 5 with Primorsk, and instead would have allowed the Charter to expire on its own terms on or about April 1, 2015.

### Proposed Assignment of Charter to SCF

21. Following the sale of the Vessel to SCF, which was approved by the Bankruptcy Court on July 13, 2016 [Doc. No. 216], Tesoro learned of SCF's proposed technical management change on or about August 5, 2016 via a telephone call between myself and Erik Augustsson of SCF. At that time, I informed Mr. Augustsson and SCF that the Charter mandates that no change in the technical manager of the Vessel may be made without Tesoro's consent, which would not be given in light of the extraordinary environmental sensitivities involved with navigating the Vessel in the North Pacific and Cook Inlet and given how little time remained in the Charter period.

22. On August 16, 2016, Tesoro received from SCF a certain "management of change implementation plan ("MOCIP"), which describes the process of transitioning the technical manager of the Vessel from Prisco to SCF Management. This document makes clear that SCF began the transition process shortly after entry of the sale order and continued implementing

7

measures to effectuate the change even after receiving notice from Tesoro that Tesoro would not consent to a change in technical manager.

23. Following my phone call with Mr. Augustsson on August 9, 2016, Tesoro repeatedly expressed to the Debtors, in accordance with the provisions of the Charter, its intention to re-deliver the Vessel on grounds that the Charter is in material breach as a result of the technical management change occurring without Tesoro's consent.

24. Subsequently, Tesoro received notice on September 8, 2016 that Debtors intend to assume and assign the Charter to Myrtle Marine Incorporated ("SCF"), a nominee of SCF Tankers Limited via the *Notice of Proposed Assumption and Assignment to Myrtle Marine Incorporated of a Time Charter* (the "Notice of Assignment") [Doc. No. 256].

25. As Tesoro anticipated—but bargained to change—in negotiating for special rights in Additional Clause 02 of Addendum No. 5, and consistent with what Mr. Augustsson represented to me during our telephone call on August 9, 2016, the Notice of Assignment states that SCF has represented to the Debtors that "the technical management of Zaliv Amerika by SCF's in-house technical manager SCF Management Services (Dubai) Limited, provides adequate assurance of future performance . . . ." *See* Notice of Assignment, p. 2.

26. Tesoro does not consent to the proposed change in technical manager or of any change to the Vessel's crew. Tesoro's right to approve any change in the technical manager is explicitly protected in Additional Clause 02 of Addendum No. 5. Approximately six months of the Charter period remain, and, as demonstrated above, any change in technical manager will render the ship untradeable for a two to three month period at minimum. SCF cannot provide Tesoro with the full benefit of its bargain if Tesoro cannot trade the Vessel for 50% of the

8

remaining Charter period as a result of SCF changing technical managers of the Vessel over Tesoro's objection, in violation of Additional Clause 02.

27. At this time, Tesoro understands that the Vessel is currently docked at Tanjung Pelepas for a cargo discharge, which is to be completed approximately September 17, 2016. Following completion of discharge at Tanjung Pelepas, Tesoro understands that SCF has instructed the ship to proceed to Singapore on or about September 18, 2016, where an underwater survey of the vessel is planned as well as a change to the Vessel's crew. SCF will then seek Class approval of the underwater survey before the ship departs from Singapore. Each of these events constitute "off-hire events" under Charter Clause 21(a) meaning that these are events which cause a loss of time (time for which the Vessel cannot be in service). Moreover, if the underwater survey of the Vessel reveals any unexpected deficiencies, a longer "off-hire" event could result while the deficiencies are addressed. Each of these actions will cause significant delays and interfere with Tesoro's ability to utilize the Vessel.

28. But for the Debtors' assurances that it would not change technical managers without Tesoro's consent, which was reaffirmed during the Debtors' chapter 11 cases when the Charter was amended a sixth time on March 9, 2016, Tesoro would not have extended the Charter. Accordingly, Tesoro submits that SCF can only provide adequate assurance of future performance if it abides by Additional Clause 02. Because SCF admittedly does not intend to abide by Additional Clause 02, and in fact has already commenced a transition in technical managers despite not yet having Court-approval of the Charter assignment and despite being aware of Tesoro's opposition, Tesoro submits that the proposed assignment of the Charter must be denied.

9

DATED:  September 16, 2016

/s/ Mark D. Wilson
Mark D. Wilson
Vice President of Marine and Commercial Operations
Tesoro Maritime Company